Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

FILED

# UNITED STATES DISTRICT COURT

2023 MAR 24  PM 5:05

for the

CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

_____ District of _____

BY_____
DEPUTY

_____ Division

Xavier L. Crittendon

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.  1:23 CV 00327 LY

*(to be filled in by the Clerk's Office)*

_____
*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint.*
*If the names of all the plaintiffs cannot fit in the space above,*
*please write "see attached" in the space and attach an additional*
*page with the full list of names.)*

–v–

State of Texas
Health and Human Services Commission

_____
*Defendant(s)*
*(Write the full name of each defendant who is being sued.  If the*
*names of all the defendants cannot fit in the space above, please*
*write "see attached" in the space and attach an additional page*
*with the full list of names.)*

## COMPLAINT AND REQUEST FOR INJUNCTION

I.    **The Parties to This Complaint**

A.    **The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Xavier L. Crittendon |
| Street Address | 202 Cockrell Hill Road |
| City and County | Ovilla |
| State and Zip Code | Texas |
| Telephone Number | 2142763277 |
| E-mail Address | xavierlcrittendon@gmail.com |

B.    **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title *(if known)*.  Attach additional pages if needed.

Defendant No. 1

    Name

    Job or Title *(if known)*    State of Texas Health and Human Services Commission

    Street Address    4601 W. Guadulupe

    City and County    Austin

    State and Zip Code    Texas 78711 3247

    Telephone Number    512.424.6500

    E-mail Address *(if known)*

Defendant No. 2

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 3

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 4

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

[✔] Federal question          [ ] Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.
HOUSE BILL 525, SECTION 1. Subtitle H, Title 10, Government Code, is amended by adding Chapter 2401. Sec. 2401.002. ESSENTIAL BUSINESS; PROHIBITED RESTRICTIONS.  Sec. 2401.003 RELIEF AVAILABLE. Sec. 2401.114 IMMUNITY IS WAIVED Sovereign and Governmental is abolished. UNITED STATES CONSTITUTION; INALIENABLE RIGHTS

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

    a.    If the plaintiff is an individual

The plaintiff, *(name)* Xavier L. Crittendon , is a citizen of the State of *(name)* Texas .

    b.    If the plaintiff is a corporation

The plaintiff, *(name)* State of Tx Health and Human Services Comm , is incorporated under the laws of the State of *(name)* Texas ,

and has its principal place of business in the State of *(name)*

Texas .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

    a.    If the defendant is an individual

The defendant, *(name)* , is a citizen of the State of *(name)* . Or is a citizen of

*(foreign nation)*

b.    If the defendant is a corporation

The defendant, *(name)* <u>State of Tx Health and Human Services</u>, is incorporated under the laws of the State of *(name)* <u>Texas</u>, and has its principal place of business in the State of *(name)* <u>Texas</u>.

Or is incorporated under the laws of *(foreign nation)* <u> </u>,

and has its principal place of business in *(name)* <u>Texas</u>.

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

2% biennial budget for State of Texas Health and Human Services Commission since 2011 in addition to what is ORDERED in this matter; The usual, customeary and normal behavior of the Defendant to perform repeated acts of scandalmongering, public humiliation (public posting) and harassment is become extenuating and etreme spanning over a period of more than eleven years, since 2011.

## III.   Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the injunction or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.    Where did the events giving rise to your claim(s) occur?

Ellis County, State of Texas, All Things Good Kids Academy ATG. An agent incorrectly cited a deficiency and when an effort was made to correct the citing the agent was not permitted. Plaintiff escalated the matter only to find a refusal to correct the deficiency ultimately resulting in retaliation by frivolously citing in an effort to cause harm, injury and eventually closure of the facility for years to no avail.

B.    What date and approximate time did the events giving rise to your claim(s) occur?

Defendant resorted to a FORCED CLOSURE to appease their FAILED efforts that began in 2011 when Plaintiff served as Director and the more since 2018 as an Owner causing loss of rapport with various organizations, loss of funding or grants, increased insurance, families forced to find other programs (some gained lawyers), other organizations showed concern for conducting business with Plaintiff. Closure became effective approximately August 11, 2022 (EXHIBIT G 5/17). On August 22, 2022 Defendant forwarded a report of PERMANENT CLOSURE to other Texas state agencies, caused an end of rapport with businesses corporation who benefited and groups who are awarded funding from the Defendant.

C.    What are the facts underlying your claim(s)?  *(For example:  What happened to you?  Who did what? Was anyone else involved?  Who else saw what happened?)*
Defendants FORCED CLOSURE of a religious faith based and essential business during a declared disaster began with a deceitful effort to request a suspension of services then a report of PERMANT CLOSURE TO Childcare Group Dallas County (CCG), Childcare Assistance Ellis County (CCA), (EXHIBIT Audio Recording), while Educational First Steps (EFS), Advance Childcare Services Child (ACSC) and Child and Adult Care Food Program (CACFP), Texas Rising Star (TRS) and other Texas State Agencies began to withhold, delay, avoid response and revoke licensures.  Other businesses awarded funding by the state of Texas began to flag, close accounts and increase rates.  Texas Workforce Commission (TWC) continuance of payday claims closed in April of 2022, coercing, harassing and badgering Plaintiff.  Inquiries and request for intervention resulted in Defendant engaging the Federal Bureau of Investigations (FBI) to conduct a full investigation; surveillance, wiretapping, interception of calls, tracking by travel and drone, etc.

## IV.    Irreparable Injury

Explain why monetary damages at a later time would not adequately compensate you for the injuries you sustained, are sustaining, or will sustain as a result of the events described above, or why such compensation could not be measured.
IMMEDIATE RESOLUTION of outstanding financial obligations resulting in FORCED CLOSURE is DETRIMENTAL to prevent success of Defendant's effort against a faith based religious organization and essential business.  Immediate relief will ensure there is no further loss of property and regain what has been lost to include school vans, work vehicles and tools.  Property insurance and outstanding obligations to staff and vendors.  Plaintiff must regain licensures, software and all requirements and financial obligations to restore business operations, employment opportunities and quality services.  Plaintiff requires medical and other support services to recover from emotional and physical duress, stress and injury caused by Defendant.

## V.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.
2% biennial budget for State of Texas Health and Human Services Commission since 2011 in addition to what Plaitiff Prays is ORDERED in this matter.

Plaintiff Prays the Court will find Defendants efforts EXTRA ORDINARY and result an EXTRA ORDINARY JUDGEMENT on behalf of Plaintiff.

## VI.     Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.     For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:          03/17/2023

Signature of Plaintiff

Printed Name of Plaintiff        Xavier L. Crittendon

### B.     For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

# UNITED STATES DISTRICT COURT

for the

Western District of Texas

Austin Division

COMPLAINT AND REQUEST FOR INJUNCTION (Continued)

HB 525 Chapter 2401 PROTECTION OF RELIGIOUS ORGANIZATION; Section 2401.002 ESSENTIAL

BUSINESS; PROHIBITED RESTRICTIONS: Effective September 1, 2021; The law prohibits state

agencies, to include HHSC, from prohibiting religious organizations and essential businesses

from engaging in religious or other related activities or from continuing to operate in the

discharge of its foundational faith-based mission and purpose. It also prohibits state agencies

from ordering a religious organization to include essential businesses to close or otherwise alter

its purpose or activities.  https://capitol.texas.gov/tlodocs/87R/billtext/html/HB00525F.htm

## QUESTIONS PRESENTED

Question One:  Why did the State of Texas Health and Human Services Commission forcibly

close a faith-based, religious early childhood education program and essential business during a

declared disaster causing hardship to a community seeking quality early childhood education

programs that were in great demand because of the scarcity of available facilities withstanding

the impact of the current disaster and will IMMEDIATE INJUNCTIVE AND DECLARATIVE relief be

granted to justly remedy drastic damages and injury this matter and waive the state's immunity, sovereign or governmental?

Question Two: Why have the acts of the State of Texas Health and Human Services Commissions resulted in irreparable injury to the healthiness and well-being of the Plaintiff, emotional injury suppressing the ability to perform activities of daily living such as eating and sleeping, such duress manifesting into physical ailments as chest pain, shortness of breath and other illnesses, defamation of character that is not reparable, years of financial loss WITHOUT JUST CAUSE, WITHOUT CONSCENT, WITHOUT NECESSITY and will special consideration given to the nature of this cause and an immediate injunctive and declarative order of relief be granted as requested or an amount to justly remedy this matter and waive the state's immunity, sovereign or governmental?

Question Three: Will this Honorable Court cause action be taken to identify the 16,000 early childhood education programs deemed essential businesses that closed during a declared disaster and verify their closure truly resulted from the declared disaster or whether HHSC caused injury by altering the norms of business without just cause and devolve HHSC ability to initiate FBI investigations and full blown invasion of privacy and bring all manner of harm resulting from reckless behaviors such as retaliation against its members by delegating HHSC powers and authorities locally thereby imposing transparency of a skewed checks and balances system?

## LIST OF PARTIES

State of Texas Health and Human Services Commission (HHSC), Defendant

## OTHER PARTIES OF INTEREST

Cecil Young, Executive Director for HHCS, Agent

Angela Jonson2, Agent

Jonathan Miles, Agent

Tara Ward, Agent

Walter Rideaux, Agent

Leslie Rodney, Agent

Lorena Tapia, Agent

Janet Kisler, Agent

Cyndel Shephard, Agent

Tommy Ball, Agent

Giomar Ibarra, Agent

Dallas Wilson, Agent

Bonnie Jensen, Agent

Susan Marbut, Agent

Mia Rawlins, Agent

Tiffany Hall, Agent

Jennifer, Johnson, Agent

Ibarra Giomar, Agent

Lecrecia Wells, Agent

Connie Presley, Agent

Kimberly Jones, Agent

THERE ARE NO RELATED CASES

Table of Contents

OPINIONS BELOW                                          5

JURISDICTION                                            5

CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED        5

STATEMENT OF THE CASE                                   6

CONCLUSION                                             16

REASONS FOR GRANTING                                   17

PRAYER                                                 17

LISTED DEFENDANT                                       20

ORDER FOR IMMEDIATE INJUNCTIVE RELIEF                  24

ORDER FOR IMMEDIATE DECLARATIVE RELIEF                 26

EXHIBITS                                               28

INDEX OF APPENDICES

Sec.A2401.003. RELIEF AVAILABLE. (a) A person may assert a violation of Section 2401.002 as a claim or defense in a judicial or administrative proceeding and obtain: (1) injunctive relief; (2) declaratory relief; and (3) court costs and reasonable attorney 's fees

UNITED STATED DISTRICT COURT

Sec. 2401.003. RELIEF AVAILABLE (b) Notwithstanding any other law, a person may commence an action under this section and relief may be granted regardless of whether the person has sought or exhausted available administrative remedies.

TABLE OF AUTHORITIES

HOUSE BILL 525, SECTION 1. Subtitle H, Title 10, Government Code, is amended by adding Chapter 2401.

Sec. 2401.002. ESSENTIAL BUSINESS; PROHIBITED RESTRICTIONS.

Sec. 2401.003 RELIEF AVAILABLE.

Sec. 2401.114 IMMUNITY IS WAIVED Sovereign and Governmental is abolished.

CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED

UNITED STATES CONSTITUTION; INALIENABLE RIGHTS

We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness."

SUMMARY OF CASE

The Defendant in this matter violated House Bill 525.2401 as it pertains to the protection of religious faith based organizations that forced closure and altered operations for two businesses All Things Good Kids Academy and another ANV Concepts Home Health Services. The Defendant and its agents have infringed upon the freedoms of the Plaintiff to conduct business, have obstructed justice by preventing administrative and SOAH Hearings and causing refusal of counsel in other matters and agents acting as attorneys in other matters Kipp Marshal with Silberman Law Firm.  Over eleven years of documented efforts to cause Plaintiff harm has now resulted in unlawful efforts to include the involvement of other state agencies and federal agencies including the FBI surveillance tracking, blocking access to, shutting down, and taking all sorts of action against Plaintiff.  These efforts have caused great fear for life and lively hood, phycological damage, physical ailments, emotional stress, and duress.  Over eleven years of torment.

Plaintiff prays for immediate injunctive and declarative relief needed by April 2023 for the sake of . justice

## STATEMENT OF CASE

Defendant's repeated acts of terrorism and verbal assault was first noted in the year 2011 when the Defendant's agent Walter Rideaux found the Plaintiff serving as Director for an early childhood education program that had never been cited for a deficiency.  Walter Rideaux responded to that finding by boldly proclaiming "Let's see what we can do about that", Walter Rideaux began citing the facility via the mail.  Walter Rideaux would visit the facility and leave without indicating there was any finding or potential finding of deficiency and since the area is rural the mailbox was compromised, and all the mail went to a P. O. Box.  Since the Plaintiff was unaware of this effort the citing for deficiency remained in the P. O. Box past the deadline to request an Administrative Review to contest the deficiencies.

Walter Rideaux cited a deficiency that none of the facility's twelve staff had background checks, a "high citing".  Since the background checks were in paper form and had original signatures and dates that indicate the fingerprint based background checks were performed, he was willing to correct the citing for deficiency.  However, the Defendant's agent, Supervisor Kimberly Johnson refused to respond to Walter Rideaux's request to allow access to the system and correct the citing.

After, escalating the matter to Kimberly Johnson's manager, Defendant's agent Connie Presley, an invitation was extended to meet to discuss the matter.  Plaintiff arrived at Connie Presley's office only to find there would be no change to the citing discovered via the mail, regardless of the indisputable evidence that Walter Rideaux's citing for not performing background checks on twelve employees was inaccurate.  These citing are considered "high" and impact the facility's rapport with the many school systems that are serviced, hiring events

with Texas Workforce Commission (TWC), insurance rates, and so many other areas of business operations.

Then in the form of retaliation in the year 2016 Defendant's agent Lecrecia Wells arrived unannounced at the facility and excitedly proclaimed "we gone shut you down" before introducing herself. This threat was made immediately after the wrongful citing made by Walter Rideaux was escalated as a complaint to Connie Presley. Kimberly Johnson began to rotate her direct reports to visit the facility unannounced and without any type of report or complaint to harass and frivolously cite for deficiencies.

The Plaintiff applied to participate in Texas Rising Star and was found to be eligible as a two-star facility with only the submission of required documents to be recognized as a three-star facility. The Defendant's agent Susan Marbut, a direct report of Kimberly Johnson, arrived at the facility to be frivolously cited for multiple deficiencies to terminate that eligibility. All citing for deficiencies were for processes or procedures that were acceptable by the facilities assigned agent while another may cite the same procedure or process based solely on their interpretation and without regard to the previous agent's approval. The Minimum Standards for Licensed Childcare Facilities require agents to cite based on their interpretation in too many instances. For example:

1. Having an additional contact with a different address for an emergency on file.
   Additional information was provided separately and entered into ProCare, the facilities management system and manually placed in the files; however the original admission form was not always altered. The emergency contact lists were printed and available in

every classroom, in the common areas, and on the vehicles.  Though Susan Marbut was provided the lists showing additional contacts, the facility was cited for deficiency.

2. Having documentation of fire inspections.  Documenting the date of the inspection was sufficient according to the minimum standards.  The forms used to document the fire inspections are published in the Defendant's provider portal.  However, Susan saw a report for one visit and cited for not having a report for the last visit though it was documented and was timely.  In the facility's small town and rural area, a report was provided only if there was an item that needed to be corrected, updated or changed to pass inspection.  Plaintiff had to call the fire chief and request they develop a report of no findings to appease Susan Marbut; it took the fire marshal about a week to develop the requested report, Susan Marbut threatened to recite the citing that ultimately remained on Plaintiff's public record for five years (EXHIBIT).

Together Kimberly Johnson and LaCrecia Wells gained information from a Guardian's spouse by calling her at work and asking her to provide her husband's pertinent information (name, date of birth, etc.) to conduct a background check for employment knowing the Guardian had a felony background base on what the spouse communicated.  The Defendant used that pertinent information to conduct a background check for employment under the facility's license as though the Guardian were an employee and claimed that Guardian was a bus driver even after months of surveillance never to find that Guardian transporting any child as an employee and knowing The Guardian's biological child and nephews and extend family were enrolled as students.

The facility suffered greatly as the Defendant's agent Jennifer Johnson arrived months later citing a deficiency saying some of the children said the Guardian was transporting students when in fact after the Plaintiff shared the harassment endured the Guardian disenrolled his child not to return. Defendant coerced the Plaintiff into accepting a twelve-month probationary period where there would be motoring to assure the Guardian actually was not an employee providing transportation for the facility, only to find out that probation included an end to the contract for subsidies for low income families, signage to be publicly displayed stating Plaintiff was on probation and constant unannounced visits over the span of the probation period.

There was no finding or citing for deficiency during that twelve month span because there was no application for employment on file nor affidavit on file warranting the completion of an employee fingerprint based background check for a Guardian to an enrolled child. The Defendant did not provide the Guardian nor the Plaintiff any notification that this action was being performed and there was no notice of results or findings regarding this effort to anyone.

LeCrecia Wells and Kimberly Johnson both arrived at the facility, taking children into a classroom unsupervised to be questioned as Plaintiff was refused the request to be present during the inquiry. Parents were irate at this unannounced procedure and did not return to the facility. Defendant also visited student's schools after that date to question children regarding the matter. The Defendant's visit happened to be during a state exam. One parent attributes her child's failure of the timed state exam to this unorthodox method as the child was disturbed once disengaged and could not concentrate after the Defendant questioned him for such a long time.

Parents were called on their jobs and told to remove their children immediately and had to threaten the Defendant they would gain attorneys to stop the harassment as they had found a facility they were absolutely happy with and knew their children were safe and nurtured.

The Defendant had received all enrollment forms pertaining to the Guardian to include his family and his daughter's enrollment forms and dates of employment, applications, time sheets and roster of employees who served as bus drivers.

Kimberly Johnson forwarded the last page of a Risk Evaluation that was already completed to the Plaintiff pertaining to the Guardian for whom she caused the CBCU to perform an unauthorized background check and threatened that a signature must be obtained by the Plaintiff.   A penalty was accessed, and Plaintiff was given a date payment had to be made to prevent further action being taken against the facility.

The Defendant would not grant a request for an Administrative Review nor SOAH hearing regarding the citing for not performing an employee fingerprint based background check for a Guardian to an enrolled child.  Plaintiff had no knowledge of how to take a defensive stand against the relentless efforts of the Defendant who had no boundaries and was their own "god".  Plaintiff merely accepted the actions taken against her and endured the merciless harassment, taunting phone calls, public humiliation, character assassination, embarrassment, psychological effects, physical stress, unbearable duress and financial hardship caused by the Defendant's action in an effort to cause the religious, faith based, early childhood education, essential business to result in closure.

An applicant, Vickie Jones, applied as a caregiver.  Vickie Jones had experience as a caregiver within one year of her application and would have normally been a very quick

approval for employment eligibility. After two weeks Plaintiff contacted the CBCU and spoke with Lorena Tapia who stated she had been out on maternity leave and would get to Vickie Jones results when she could. Lorena Tapia reminded the Plaintiff that Vickie Jones could not be hired until she sent the letter saying she was eligible and able to be present at the facility. I decided to call the facility where the fingerprints were performed to find the results were forwarded to the Defendant the very next day. Lorena Tapia did not submit the letter indicating Vickie Jones was eligible to be present at the facility as a caregiver until thirty one days after the results were received. This process is normally a maximum of three days; thus the intent was malicious.

Vickie Jones, an eligible employee, was being hired to assure the number of staff required to be present at the facility during a period of growth. The Defendant held the applicant's fingerprint based background check to see if the Plaintiff would allow the applicant to begin working prior to receiving the eligibility letter from CBCU. Though this was an act of sabotage, according to the Minimum Standards for Childcare Centers, if the facility is short staffed and the initial background check is cleared then the applicant can be hired as an employee and can be counted in ratio and the fingerprint based background check would have to be scheduled within thirty days (previous regulation).

LeCrecia Wells arrived again at the facility and cited deficiencies for two staff not having complete background check results. This arrival was without report or complaint; however, the Defendant is aware of new staff hires or applicants because the Provider Portal is the required method for conducting background checks for these new hires and applicants (EXHIBIT 79) and Lorena Tapia in the Central Background Check Unit who is the gateway for fingerprint-based

results said she notified LeCrecia Wells that two employees were pending their fingerprint based background checks.   LeCrecia Wells arrived to the facility with the two staff who had cleared the Defendant's initial background check and was able to work in the capacity of caregiver if the facility was short staffed.  LeCrecia was given the classroom logs to indicate the number of children enrolled and present, the employee roster was posted to show the number of caregivers/staff employed.  The two employees onsite were needed to accommodate the number of children present; however, LeCrecia Wells concluded that "if" the Plaintiff was onsite there would not be a need for both staff to be present and the staff listed as PRN should have been present.  LeCrecia Wells refused to take into consideration the staff listed as PRN was not available and the school age children had been release from school and was enroute to the facility.  Had the school age children arrived with the number of staff present at the time LeCrecia Wells visit, the facility would have been "out of ratio" because of staff shortage.  LeCrecia Wells had hurriedly left the facility and record of the citing was left, according to staff.

The Defendant did grant an Administrative Review for the citing of two staff whose fingerprint based background checks had not been received.  The Administrative Review was upheld by the Defendant thus a SOAH hearing was requested.  This was the first SOAH hearing Plaintiff participated in.  The Defendant controlled every aspect of the scheduling of the hearing.  If the if the Defendant did not want a SOAH to be held then an Administrative Review would simply be denied, or a request for a SOAH hearing will remain in "limbo" without response.  And, if there is a penalty associated with the citing the Defendant will require payment of the penalty by a certain date (this is a free form text area Defendant can manipulate depending on the pursuit) while withholding a letter confirming receipt of the

request for an Administrative Hearing. And, payment of the penalty is an acknowledgement and acceptance of the deficiency cited as it will remain on the record for five years.

The Defendant provided notification that a SOAH hearing was granted and would be added to the court docket, assigned a date and time for the hearing; the letter was received. On the day of the hearing, a United States Parcel (UPS) ground delivery arrived with a letter for the Plaintiff giving notice of how to submit evidence for the hearing that was required by the court three days prior to the hearing. Plaintiff remembered the string of emails for the Defendant was usually the first name dot (.) the last name and used that format to forward evidence to the Defendant's attorney, and LeCrecia Wells.

When the Honorable Judge began to discuss the Defendant's evidence, the Plaintiff then shared the tactics of the Defendant and was permitted to email the clerk evidence for the hearing. The Honorable Judge received audio recording and documentation provided to LeCrecia Wells at the time of the citing hoping she would reconsider. The Honorable Judge found the Plaintiff to be in compliance – judgement was for the Plaintiff. The Defendant' attorney was furious and submitted communique and documents to the court without submitting the same to the Defendant. Plaintiff requested documents from the Court's Clerk.

During the hearing, before judgment was made, Plaintiff asked if the Defendant would remove or correct the citing if judgement was made in favor of the Plaintiff. There was no response and the citing remained on the Plaintiff's records for five years despite the judgement and the repercussion of the citing impacted the Plaintiff for five years to include increased insurance rate, public humiliation seen on Defendant's website , questionable ethics amongst

peers and judged character by the community and clients and so many other financial burdens and hardships.

There seemed to be no other recourse, so the Plaintiff escalated the matter to the State of Texas Health and Human Service Commission only to be investigated.  The Federal Bureau of Investigation (FBI) conducted an official investigation of the Plaintiff.  An agent arrived at the facility unannounced and while in front of children and caregivers, gained the Plaintiff's fingerprints and signature.  She looked at the red door and asked if that was where the Plaintiff lived.  She said, "You must be a happy person".  I said, "You have to be when your working with children".  A gentleman arrived announcing he worked for the FBI and asked if he could look around back, saying, "I want to make sure it is safe".

In an effort to gain a few days of rest for an overburdened staff, the Plaintiff sought help from the Defendant who coerced a request for "voluntary suspension" as an "only option" to close for a few days, then notified all other agencies of "permanent closure".  The Defendant's form of notification was not that of a usual closure request for a few days that would merely require the Plaintiff to notify the days of closure to its affiliates with no other action needed and no other effect.  The Defendant instead sought to cause an actual closure, forcing an extended amount of time that contractually ends Child Care Relief Funding (CCRF) made available during the heart of the declared disaster as a means of support, Childcare Assistance Ellis County (CCA) and Childcare Group (CCG) who provide referrals for low income families receiving subsidies for childcare services and forced separation of our rapport with affiliates such as Educational First Steps (EFS) a support system for early childhood education programs, Texas Rising Star (TRS) who recognizes early childhood education programs for their

exceptional service and is now a requirement for federal funding and support and finally

Advance Childcare, a third party who supports the Child and Adult Food Program (CACFP) that

allows for reimbursement of wholesome meals and meals service.

Despite the great need for childcare and regardless of the law of protection for essential

businesses (HB 525) did orchestrate a master plan of action to cause the Plaintiff's faith-based

early childhood education program and essential business to permanently close during a

declared disaster.  This plan of action was maliciously and intently performed without Plaintiff's

knowledge or consent.

Furthermore, the Defendant has chosen to take a personal approach of attack on

Plaintiff by causing federal agencies, other Texas state agencies, corporate entities, other

organizations and businesses to act as agents with special interests to cause harm, injury and

ultimately Plaintiff's inevitable failure in the midst of a declared disaster without regard to the

many delicate lives it will impact.

An irreparable psychological injury is suffered as a consequence of the Defendant's

usual, customary and normal behavior against its own member that includes but is not limited

to an invasion of right to privacy and excessive use and abuse of powers and authority as twice

the Federal Bureau of Investigation (FBI) has conducted official investigations of Plaintiff.

Now again, over a period of months without introduction or warning, a full scope of

invasion of privacy is launched against the Plaintiff, its own member as a result of escalation to

the Commissioner of Texas State of Health and Human Services and other officials seeking their

help to end the actions of its agents that have brought about an indescribably amount of fear

and uncertainty.

The Defendant's usual and customary behavior does not exude that of support, issuing clarity of rules and regulations for the perfecting of early childhood education programs and other community-based programs. Instead, the Defendant exudes its "god like" powers and authority used to threaten, bully, intimidate and retaliate by scheming, fraudulently documenting and pooling resources to set the stage for its subjects to fail.

It is the Plaintiff's Opinion that the Defendant has not only violated House Bill (HB) 525, 87th Legislature, Regular Session, 2021 and The United States Constitution of Inalienable Rights; and has committed the most heinous criminal acts against its own members bringing harm to little children, families and communities and has refuted the very purpose of its creation all in a tacky and reckless pursuit to cause failure of not only a faith based religious organization and essential business but has taken a special interest in causing the Plaintiff to give up hope on every initiative to help those who need it the most.

In April of 2022 Plaintiff's home was invaded by Arthur Patterson who was met and married within weeks of encounter. Arthur Patterson seemed to have his life together and would easily make a good partner. He worked at Owens Corning for over ten years, had invested in a 401K, had a five bedroom home in DeSoto, Texas and was taking care of his five daughters. He was physically aggressive towards the Plaintiff at an Educational First Steps fundraiser event held on February 22, 2022 causing their separation. April 21, 2022, Arthur Patterson had arrived at Plaintiff's work demanding money saying he wanted 20K dollars. When explained there was no amount of money like that accessible to the Plaintiff for him to start a car dealership, he left angry. Arthur Patterson arrived at the Petitioner's home after she pulled into the drive and entered her home, forcing his way in. Out of fear and not knowing

what to expect of a man the Plaintiff does not know, who has repeatedly been aggressive and was over six feet tall and towering over Plaintiff, the police was called.  While on the phone with 911 the Plaintiff took her firearm out the box and told Arthur Patterson repeatedly, "get out of my house".   The 911 operator instructed that if the Plaintiff could leave out of the home safely and put the gun away the police were less than three minutes away.  The Plaintiff was outside when the officer arrived.  The officer called the Plaintiff into the home and asked if there if there was a gun.  The officer took the Plaintiff's firearm and cellphone and proceeded to arrest the Plaintiff.  The Plaintiff's attorney stated the charges had not been filed due to lack of evidence supporting the charge (EXHIBIT 75).

After the arrest and protective order placed against Plaintiff, Arthur Patterson refused to adhere to the protective order leading to several witness testimony and police reports being filed in Ellis County, to no avail (EXHIBIT 76).  Revenue was taken from the Plaintiff's business account resulting in a claim being filed only to find that Arthur Patterson with the bank (EXHIBIT 77).  The Plaintiff Charges and the arrest of Plaintiff since April 2021, when a gentleman she was divorcing for assaulting forced his way into her home.  Plaintiff pulled her weapon asking him to leave and called the police who instructed to just get out safely because the police were minutes away.

Plaintiff prays this charge will soon be dropped; however, it conveniently remains on record to date without a case being filed and is used as a premise for the Defendant to barr the Plaintiff from the early childhood education program and essential business.  Defendant is not willing to perform a risk evaluation to show the Plaintiff is not a risk to children or acknowledge

a variance request to show leniency during the Plaintiff's barr; instead, would rather assure the operation is hindered from providing essential services during a time of declared disaster.

August of 2022, Defendant in this matter willfully, and intentionally forced the closure of Plaintiff's faith base organization c., a religious and faith-based institution and essential business during a declared disaster, without Plaintiff's knowledge, just cause or consent.

Defendant and its agents caused Plaintiff to close its doors as a Voluntary Suspension rather than a few days to rest from exhaustion of the natural disaster in combination with Defendant's nuisances rather than accepting notification of closing for a few days. Defendant, induced Plaintiffs request made in writing for "voluntary suspension". After Plaintiff made the request for Voluntary Suspension, Defendant deceitfully forwarded a report indicating Plaintiff was not caring for children and requesting the license/permit to be returned and gave notice of permanent closure to Childcare Group of Dallas (Dallas County), Childcare Assistance of Central Texas (Ellis County) who distribute childcare subsidies for low income families, ended our professional rapport with Education First Steps (EFS), Texas Rising Star (TRS) (EXHIBIT Y) and Advance Childcare Network, Inc. who sponsor the Child and Adult Care Food Program (CACFP) (EXHIBIT Z).

Defendant and its agents' behavior is customary and is routinely acted or performed, resulting in, God-forsaken actions that have prevented the expansion of our services to meet the need prescribed by our President of these great United States of America, other legislative leaders and officials as urgent, which was and is to provide care to infants 0-17 weeks of age for which we were prepared, extend weekday hours and include weekend availability.

For that very reason, Plaintiff began to target children 0-17 weeks by extending the hours of operation to later evenings and hiring and training staff to provide care overnight and on the weekend.  Plaintiff purchased furniture, equipment, clothing, toys, refrigerators, microwaves, washers, dryers, rocking chairs and hiring staff, conduction extensive trainings and so much more in preparation to meet this need.

Plaintiff sought financial support during the 2021 Freeze Disaster that destroyed the grounds, building walls and ceilings, and all its content to no avail and certainly without the support and cooperation from Defendant.  Plaintiff sought assistance to repair the parking lot for convenience and safety during the disaster, and upgrade learning tools and equipment for staff and children.  Defendant wholly prevented Plaintiff from attaining proposed grants passed by the federal government to support the need to extend service to our community who is great in need.

Plaintiff extended the hours of the operation to thirteen hours per day for over two years to accommodate the need of our essential workers who were police officers, nurses, educators for independent school systems, and so forth.  Plaintiff, increased staff hours to assure adequate cleaning and sanitation were performed three times a day (before arrival, at rest time, and after supper).  Plaintiff increased staff hours to allow the facility to completely "air out" with fresh air and fans two hours before opening each day.

Plaintiff trained staff on how to prevent the spread, recognize the signs, and how to cope with COVID-19 if contracted according to the Centers for Disease Control (CDC).  All held the others accountable, including our parents, vendors, and children on how to practice good health and practical techniques to prevent the spread of COVID-19.

The many purchased to include, televisions, stoves, refrigerators, washers and dryers, outdoor equipment, indoor equipment, large and small manipulatives to develop motor skills, helps for teaching American Sign Language (ASL), classroom furniture cafeteria furniture, rocking chairs, classrooms (and so much more), extending operational hours to overnight and weekends to meet the need of police stations across the street and hospitals less than 8 minutes away, etc., and adding additional homecooked meals that always includes fresh fruit and veggies, and adding a fourth language to our curriculum, only to be forced to close with no means to offset the cost is having an immediate impact whose consequences are imminent. Defendant's ability to cause harm is a form of imprisonment by preventing the freedoms to conduct business that includes Defendant's intentional delay of response to a request for a SOAH hearing.

The defendant began to intentionally delay background check results for over thirty days preventing hiring of eligible staff and threatened that if anyone was hired before their written approval of eligibility then the facility would be cited.  , preventing the right to request Risk Evaluations for charges to background check results to identify whether or not there is a threat to children, frivolously cite multiple citing when notified by Texas Rising Star of eligibility for participation to prevent recognition of good works and even stage citing by propping items and taking pictures, all as a means of battery to torment, cause a breaking point in the human will to survive.  Defendants' actions are a form of unexplained, unbearable, relentless, over exertion of power and authority, torment, harassment and fatal duress to cause the death of vision, mission, goals, values and ideas that are the inalienable rights of the Plaintiff.

Plaintiff proudly pronounces that neither COVID-19 nor RSV was spread within our facility throughout the pandemic – to date.  We are an exceptional early childhood education program, seeding the good news of our faith and impacting the lives of our children, their families, our communities, and all whom we encounter.  Our students leave us with praise in their hearts, skills that launch them into society successfully as viable contributors, empowered never to give up on God's promise to them – "Yes and Amen".  We ask them each morning, "Who are you?" and they reply with their name and announce to the world "And, I Am Important".

Plaintiff, now finds herself under personal attack.  All business matter in the state of Texas is being prevented, halted, audited, flagged, or delayed as a result of retaliation by Defendant:

1. Plaintiff has been prevented from developing and organizing the Summer Food and Adult Program (CACFP) to provide meals to at-risk children and children who are not in childcare during the summer and have access to nutritious meals.

2. Home Health Service was closed TULIP would not allow entry to renew license

3. Texas Council for Insurance performing audit

4. Texas Department of Insurance performing audit

5. Insurance Agency Progressive all business is intercepted

6. T-Mobile Cellular flagged and all business is intercepted

7. SAM.gov business registration prevented, pending verification (deadline April 13, 2023)

8. ADT Security intercepted, another user who is the MASTER has control of the system

9.  Texas Workforce Commission reopened a closed case filed in April 2021 with no result to date

10. An exorbitant amount of phone calls from 202, 817, and 512 callers pretending to need childcare or other services asking hundreds of questions with no result.

11. Over 150 documented tours of the academy that were performed are suspected of being agents of the state.  This effort is tiring to the soul, an undue stress and duress on any human.

12. Defendant wrongfully BARRED Plaintiff from the business organization without conducting RISK EVALUATION which would find Plaintiff is not a threat to children. When asked for a Risk Evaluation, Defendant refused and has not responded to the date.  This BARR is the result of the April 2021 arrest that has not been charged or assigned as a case to the date.

13. Defendant began to wrongfully cite and prevent hearings with the State Office of Administrative Hearing (SOAH).  Defendant controls the ability to have a hearing and with no oversight or accountability prevents childcare facilities from having a hearing. Defendant, also controls communication for announcing and preparing for hearings so they announce the hearing and on the date of the hearing pay for ground delivery to send information for preparing for the hearing to include how to submit evidence for the hearing (due three days prior to the hearing), childcare facilities don't stand a chance at the wrath of the Defendant.

Defendant and its agents would rather retaliate against what is good, full of love and grace and mercy to all mankind alike than join forces to assure the needs of children and their

families are met during the most disastrous events of our lifetime, the COVID-19 Pandemic, the

2021 Freeze Disaster, and Respiratory Syncytial Virus (RSV).

Defendant threatened closure of Plaintiff's business operation but because of excellence

found it was impossible to rightfully close.  Defendant's Agents began to wrongfully cite

multiple citing each time Plaintiff received recognition from Texas Rising Star and would

document untruths about events and matters that impact Plaintiff's public record, and financial

solvency resulting in grave mental anguish, physical pain, and duress.


Plaintiff has gone from Director to Owner and has suffered Defendant's wrath since the

year 2012, over eleven years.  Plaintiff has been presented with a non-expiring license from the

Department of Family and Protective Service because of the ability to lead fairly and assure the

organization continues to provide a healthy, safe, and nurturing environment for all children.

Plaintiff has over thirty-two years of experience in early childhood education programs.

Plaintiff is completing a Doctorate in Executive Leadership and chooses to believe there is so

much greatness in our country and nations abroad that we should work together to difficulties

to benefit those who need our help most.

Plaintiffs' strive for excellence resulted in Defendant's Agents perceiving her as "thinking

she is perfect", when in fact I am the least of them.  I am the servant to the weak and the meek

and lowly.  This resulted in the Defendant's repeated and ongoing effort to do what they

exclaimed "we gone shut you down".

All Texas state agencies, organizations, entities, and institutions that are both known and unknown to Plaintiff and to this Court to cease all business, personal, and any other form of attack against Plaintiff, upon judgment, and hereafter.

All local, city, regional, state, federal, and all other entities that are both known and unknown to Plaintiff and to this Court to cease all business, personal, and any other form of attack against Plaintiff, upon judgment, and hereafter.

Defendant to assure reinstatement with Health and Human Services Commission showing no closing date with all solicited agencies, institutions, and organizations both known and unknown to Plaintiff and this Court, upon judgment, and hereafter.

Defendant assures reinstatement of Texas Rising Star (TRS) for recognition that allows for grants, funding, and other charities as it pertains to Plaintiff. This organization failed to protect those whom it has oversight and hereafter shall have no oversight of Plaintiff. This will apply to any other business operation owned by Plaintiff or in which Plaintiff serves whose oversight would normally fall under TRS and Defendant's authority.

Defendant to assure rapport with Educational First Steps (EFS) to be reinstated for recognition that allows for grants, funding, and other charities as it pertains to Plaintiff continues. This organization failed to protect those whom it has oversight and hereafter shall have no oversight of Plaintiff. This will apply to any other business operation owned by Plaintiff or in which Plaintiff serves whose oversight would normally fall under EFS and Defendant's authority.

Defendant failed to protect those whom it has oversight and hereafter shall have no oversight of Plaintiff. Plaintiff will remain faithful to assuring Minimum Standards for Licensed

Childcare Facilities are met and exceeded for childcare centers.  Plaintiff shall maintain visibility as a licensed childcare facility, maintaining a non-expiring license with DFPS as this recognition will continue to allow for grants, funding, and other charities as well as full participation in all other efforts to include events, training, meetings, system notifications, department updates, full access to provider portal, etc., and have all likeness and enjoy all benefits as a licensed childcare facility.

This organization executed the most heinous acts against Plaintiff for over eleven years, when in fact the department and its agents were designed to protect, build up and provide oversight with leadership that is commendable in its effort to assure the wellbeing and safety of children of the world.   This shall apply to any other business operation owned by Plaintiff or in which Plaintiff serves whose oversight would normally fall under Defendant's authority.

Defendant to remove citing from Plaintiff's public record be cleared as the only citing was that of a frivolous one.  The citing for staff not having complete background be stricken from public record.  Staff completed the initial background check which allows for staff to be present when there is a staff shortage.   Qualified staff was present and fingerprints were scheduled for the very next day rather than thirty days as allowed in the Minimum Standards for Licensed Childcare Facilities.  The pending charge will prevent employment else where and even housing or what if all else fails and they actually charge and convict me – who will care, who cares now?

AGENTS

Brett Pritchard

Derrick Hahn

Abazi

Kipp Marshall Silberman Law Firm

Uvonda Roberson

LaShonda Tillis

Serra Hampton

Ellis County Sherriff

Ovilla Police

Calvin Richardson

Arthur Patterson

Howard Johnson

MGMT802 RSCH860 Moon, Jody CTU FBI


CONCLUSION

In conclusion, this Court must find that Defendant maliciously forced the closure of a

faith-based religious early childhood education program and essential business out of

retaliation against the Plaintiff during a time of declared disaster despite its knowledge of

House Bill 525 that it published on its very own website.  This Court must find the Defendants'

behavior towards the Plaintiff has been unusually excessive, extraordinarily abrasive,

exceptionally abusive, spanning over an exorbitant period; and should the declarative relief be equally considered exceptional for the sake of justice.

The only possible expected outcome of Defendant's behavior towards Plaintiff by abusing its authority was to intentionally bring harm, causing an unimaginable intensification of stress, duress, anguish, and pain. For such a "god-like" power as Defendant to possess, to have its agents, impose themselves upon Plaintiff who is a citizen of the United States by fully invading Plaintiff's privacy including her home, and business, rerouting phone calls directly to the FBI, controlling cyber systems, electronic devices, agents looking like normal people appearing as service providers such as Uber, Amazon Prime, United States Postal Service, United Parcel Service, maintenance vehicles and what seemed to be thousands of black Chevrolet SUVs with tinted windows tailgating or speeding around causing fear while traveling (EXHIBITS). All Defendant performed these and all actions without authorization and intentionally invaded the plaintiff's private matters. The invasion is offensive to a reasonable person. The matter that the defendant intruded upon is a private one. The intrusion caused Plaintiff mental anguish or suffering.

And, even Defendant's ability to impede Plaintiff's court cases which according to 18 U.S.C. § 1503 defines as "obstruction of justice" as an act that "corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice."

All injunctive and declaratory relief must immediately be granted that this matter be deemed extraordinary and deliver an extraordinary judgment on behalf of the Plaintiff for the sake of justice.

REASON FOR GRANTING RELIEF

Defendant has successfully brought harm to Plaintiff's mental, physical, psychological and financial state.  The fear of being followed, the distrust of persons who look or stare, all black Chevrolets, fear of communication using cellular services, there is a constant sound of scratching or movement in the home, Plaintiff's pet sits and stares at the oddest of times and sniffs at certain electrical sockets, doors, spaces on walls, window seals and now seems to be drawn to a specific sizeable vent (large enough for someone to enter) in the ceiling (he goes and sits and stares upward).  I have a secret password to use in case I am in trouble in fear of being kidnapped, I fear when I drive my brakes will go out or a tire will explode.  I am afraid to eat or drink anything I have taken my eyes off or even use utensils fearing they are laced with a drug.

My classes at Colorado Technical University seem to be staged and the enrollment process was different.  I spoke with a Jolanta who had to get permission for me to join classes, there was no admission department this time.  I have had no calls from the success coaches or any other staff.  Courses are about agents causing harm, and understanding how to respect power.  Only a few peers show their faces, others claim they work for the FBI, Jody Moon who never shows her face and others who perform cyber security, etc. it seems to be a game and I am being toyed with.

My computer now types five characters behind and continuously refreshes the screen.  I fear that emails are not being sent or received and if so is the person responding really the intended recipient of the email, tracking web searches, accessing the area before entry of a

business location, or participating in an event or gathering?  I now fear for my life as this suit

may expose more than they will allow.  to bring harm by means of undue stress, duress,

business loss, and financial loss causing irreparable damage including physical, mental, and

emotional pain and suffering endured for over eleven years.

I now consider how long Defendant and its agents have been orchestrating this effort to

bring harm and injury against Plaintiff.  In November of 2019, Plaintiff moved into a home in

Waxahachie, Texas.  The home next door on the East side was being sold by an older couple.

The sold sign was removed and there was a noticeably "huge", muscular, Caucasian, gentleman

who would ride a four-wheeler every now and then.   Eventually, the face of the family began

to change to a husband and wife and three children with chickens, dogs, and a garden.  Nisha

was the wife to exclaim how she hated the police and would wear colorful hair and there were

black people in her immediate family.  Never thought about it before but one day when she

was over she oddly asked to see the Varkey case – a full mouth dental implant malpractice suit.

The home next door and to the West of the Plaintiff was empty until a young Caucasian

couple and their little girls moved in.  Today the house is oddly vacant.  There is a black truck

with no license plate sitting in the grass closest to the Plaintiff's side of the house.  The wife

who never texts and had not been seen nor communicated in months, sent a text asking, "is the

day still open?".

Was meeting Arthur Patterson via Facebook, not a coincidence?  His pursuit was like

nothing I had ever experienced.  Come to think of it, the Sherriff arrived, went inside the house

and spoke with Arthur, came back outside to get the Plaintiff, then made the arrest.

My days are numbered one way or another. If these beings of Special Interest allow me to live through this time, I would have lost everything and be homeless. The Defendants agents will not allow me to own or operate a business and the felony on my record though not convicted will weigh heavy on any opportunity for employment and certainly, any type of community service employment would not be accomplished.

PRAYER

Plaintiff prays the Court will cause the development of digital systems that oversee requests for SOAH hearings. And, that this system should auto-generate the announcement and instruction for preparing for SOAH hearings. This process should not be at the mercy of the department that serves to benefit from the outcome. This process must be visible to assure accountability, equality, and justice for all.

Plaintiff prays this Court finds the Defendant's acts are usual and customary behaviors of the department requiring change and additional oversight of processes to prevent the continued effort such as the matter at hand.

Plaintiff prays Defendant to be held accountable for the continued behavior that is known to be customary and usual for the department which infringes upon human rights and brings harm to many whether directly or indirectly.

Plaintiff prays at a specific time deemed by this Court, Defendant shall address the need for oversight of the SOAH process and procedure to be produced in writing for the sake of publishing to childcare centers and all those it impacts.

Plaintiff prays the Court grants immediate injunctive relief and declaratory relief, court costs, and reasonable attorney's fees in this proceeding and any proceedings.

Plaintiff, prays this Court will diligently and strategically seek after other early childhood education programs and all programs that Defendant has oversight to discover if they have suffered at the arm of Defendant; hear them, save them, our great nation needs them.

Plaintiff, prays this Court will expose the usual, customary behavior that is the Defendants' norm to cause and provoke harm; assuring no retaliation of any sort and a means to determine if there is; and cause the severe consequence of such behavior.

Plaintiff prays this Court will challenge those who hold office who have set the tone for Defendant to become and or remain a terrorist; that they also are held accountable for the acts and omission of acts performed by this Court.

Plaintiff prays this Court will not turn a blind eye to the powers and authorities that have been bestowed on Defendant; that this department be dismantled with haste.

Plaintiff prays this Court will protect all whistleblowers, that they are kept safe and not suffer the wrath of the Defendant in any form; are able to become whistle-blowers without fear, restraint, or concern for well-being.

The most important ministry is the children.  The Defendant is so broken that it has lost its savor to cause positive outcomes for the ones who are unable to protect themselves, causing their environment to that of a safe, healthy, and nurturing environment.  The design and purpose of Defendant were to save the children that these end results bring harm.

Plaintiff prays this Court recognizes the inability of the Defendant to carry out its mission alone as its nature is of a beast and it will kill, steal, and destroy by any means and

without care or concern for those to which it brings harm; find the Defendant will continue to boast in its power.

Plaintiff prays Defendant and its agents will cease all acts of terrorism against Plaintiff who is a citizen of the United States of America, upon judgment, and hereafter.   Plaintiff prays this Court will allow the formation of Another who must immediately dismantle and remedy such a state of evil as the Defendant; that powers are disbursed, and its purpose be reformed just as the potter forms the clay.

Plaintiff prays injunctive and declarative relief is granted. And, an end to the sufferings at the hand of the Defendant. Amen.

Respectfully Submitted,

/s/ Xavier L. Crittendon
Xavier L. Crittendon
P. O. Box 2033
DeSoto, Texas 75123
xaqvierlcrittendon@gmail.com
214.276.3277

United States District Court

for the

_____District of _____

_____Division

Xavier L. Crittendon

ALL THINGS GOOD KIDS ACADEMY, INC.

Pro se Plaintiff

vs.

Health and Human Services Commission, et al.

Defendant(s)


PROOF OF SERVICE

I, Xavier L. Crittendon, do swear or declare that on this date as required by the United States District Court I have served the enclosed COMPLAINT AND REQUEST FOR INJUNCTION on each party to the above proceeding or that party's counsel, and on every other person required to be served by depositing an envelope containing the above documents in the United States mail properly addressed to each of them and with first-class postage prepaid or by delivery to a third party commercial carrier for delivery within 3 calendar days.

The names and addresses of the service are as follows:

State of Texas
Health and Human Services Commission
4601 W. Guadalupe
Austin, Texas 78711-3247

I declare under penalty of perjury that the foregoing is true and correct.
Executed March 24, 2023.

Respectfully Submitted,


/s/ Xavier L. Crittendon
Xavier L. Crittendon
P. O. Box 2033
DeSoto, Texas 75123
xaqvierlcrittendon@gmail.com
214.276.3277

Other Parties of Interests

Health and Human Services Commission
Cecil Young, Executive Director
Agency #: 529
4601 W. Guadalupe
P.O. Box 13247
Austin, Texas 78711-3247

Health and Human Services Commission
Angela Jonson2, Child Care Regulation Inspector
121 Westgate Dr.
Waxahachie, Texas. 76165
Angela.Johnson2@hhs.texas.gov

Health and Human Services Commission
Tara Ward HHCS, Child Care Regulation Inspector Supervisor
1501 Circle Dr. Ste. 310
Fort Worth, Texas 76119
tara.ward@hhs.texas.gov

Texas Health and Human Services Commission
Walter Rideaux, Child Care Regulation Inspector Supervisor
8700 Stemmons Fwy, Ste 104
Dallas, Texas 75247
Walte.Rideaux@hhs.texas.gov

Texas Health and Human Services Commission
Leslie Rodney, Child Care Regulation Inspector
8700 Stemmons Fwy, Ste 104
Dallas, Texas 75247
Leslie.Rodney@hhs.texas.gov

Health and Human Services Commission
Lorena Tapia Centralized Background Check Unit
P.O. Box 149030
Mail Code 121-7
Austin, Texas 78714
Lorena.Tapia@hhs.texas.gov

Health and Human Services Commission
Janet Kisler, Centralized Background Check Unit Program Administrator
P.O. Box 149030
Mail Code 121-7

Austin, Texas 78714
janet.kisler@hhs.texas.gov

Health and Human Services Commission
Cyndel Shephard Centralized Background Check Unit
P.O. Box 149030
Mail Code 121-7
Austin, Texas 78714
Cyndel.Shephard@dfps.texas.gov
Health and Human Services Commission
Tommy Ball, Program Regulatory Enforcement Specialist VI
Texas Department of State Health Services
P.O. Box 149347
Austin, Texas 78714-9347
Tommy.Ball@hhs.texas.gov

Health and Human Services Commission
Dallas Wilson, Administrative Assistant IV
Open Records Department Legal Services Division
4601 West Guadalupe Street Mail Code: 1070
Austin, Texas 78751
Records@hhs.texas.gov

Health and Human Services Commission
Bonnie Jensen, Administrative Assistant
Records Management Office
4601 West Guadalupe Street Mail Code: 1070
Austin, Texas 78751
Records@hhs.texas.gov

Health and Human Services Commission
Susan Marbut, CCL Inspector V
1501 Circle Drive, Suite 310
Fort Worth, Texas 76119
Susan.marbut@hhsc.state.tx.us

Health and Human Services Commission
Mia Rawlins, CCL Program Improvement Specialist
1200 E Copeland Rd., Ste.400
Arlington, Texas 76011
Mia.Rawlins@hhsc.state.tx.us

Health and Human Services Commission
Tiffany Hall, Child Care Licensing Supervisor - Unit 19

550 E 15th Street - Suite 120
Plano, Texas 75074
Tiffany.Hall@hhsc.state.tx.us

Health and Human Services Commission
Jennifer Johnson, CCL Inspector IV
121 Westgate Drive
Waxhachie, Texas 76165
Jennifer.Johnson3@hhsc.state.tx.us

Health and Human Services Commission
Gio Ibarra, Child Care Regulation Supervisor II
535 S Loop 288
Denton, Texas 76205
Giomar.Ibarra@hhs.texas.gov

ORDER FOR IMMEDIATE INJUNCTIVE RELIEF FOR PLAINTIFF

IT IS ORDERED, Defendant and its agents will cease all acts of terrorism against Plaintiff who is a citizen of the United States of America whether those acts be known or unknown by Plaintiff and this Court, upon judgment, and hereafter.

IT IS ORDERED, Defendant to assure full reinstatement of Plaintiff early childhood education program and same with all agencies, institutions, and organizations both known and unknown to Plaintiff and this Court, who acted as Agents for the Defendant upon judgment, and hereafter.

IT IS ORDERED, Defendant to assure reinstatement of Texas Rising Star (TRS) for recognition that allows for grants, funding, and other charities as it pertains to Plaintiff. This organization failed to protect those whom it has oversight and hereafter shall have no oversight of Plaintiff. This will apply to any other business operation owned by Plaintiff or in which Plaintiff serves whose oversight would normally fall under TRS and Defendant's authority.

IT IS ORDERED, Plaintiff shall be reinstated with Education First Steps (EFS) for recognition that allows for grants, funding, and other charities as it pertains to Plaintiff. This organization failed to protect those whom it has oversight and hereafter shall have no oversight of Plaintiff. This will apply to any other business operation owned by Plaintiff or in which Plaintiff serves whose oversight would normally fall under EFS and Defendant's authority.

IT IS ORDERED, Plaintiff's public record be cleared and citing for no background check be stricken from internal and external record and all systems known and unknown to Plaintiff and this Court.

IT IS ORDERED, The barr against Plaintiff be lifted and stricken from the public record and personal record and all systems known and unknown to Plaintiff and this Court. Plaintiff t be reinstated as Director with a non-expiring license.

IT IS ORDERED, Defendant shall have no oversight of Plaintiff. Plaintiff will remain faithful to assuring Minimum Standards for Licensed Childcare Facilities are met and exceeded for childcare centers. Plaintiff shall maintain visibility as a licensed childcare facility, maintaining a non-expiring license with DFPS as this recognition will continue to allow for

grants, funding, and other charities as well as full participation in all other efforts to include events, training, meetings, system notifications, department updates, full access to provider portal, etc., and have all likeness and enjoy all benefits as a licensed childcare facility.

IT IS ORDERED, this remedy shall apply to any other business operation owned by Plaintiff or in which Plaintiff serves whose oversight would otherwise fall under Defendant's authority.

IT IS ORDERED, Texas Workforce Commission Claim Number 22-051235-5that was closed then reopened to cause stress, duress, and harm to Plaintiff be permanently closed and find that judgment for Plaintiff is fair and just.

IT IS ORDERED, all means of support be given to Plaintiff to provide meals to children in the community during school closures through the CACFP food program. Plaintiff is granted non-expiring licenses and permits to perform this service for those who need it most, upon judgment.

IT IS ORDERED, Waxahachie Sherriff Department drop all charges and pending charges against Plaintiff from both public and internal records. The charges have been used as a tool and leverage for Defendant to bring harm to Plaintiff who has committed no crime; All charges be expunged from the record, upon judgment.

IT IS ORDERED, the Texas Department of Public Safety reinstate license 07109329 and issue it as a non-expiring license, upon judgment.

It is ORDERED and all that all Orders for all injunctive Relief are GRANTED to Plaintiff. Final Judgment for which let execution and all writs and processes necessary to immediately enforce this judgment. All special interest in bringing harm and injury to any extent in any manner for any reason at any time immediately ceases and gives no rise hereafter. This judgment disposes of all claims and all parties and subjects in this matter and is not appealable.

_____

Date of Judgement

_____

Judge Presiding

ORDER FOR IMMEDIATE DECLARATIVE RELIEF FOR PLAINTIFF

IT IS ORDERED and DECLARED, Texas Workforce Commission, HHSC will update the DFPS Portal to reflect All Things Good Kids Academy as "accepts subsidies" thus Plaintiff shall receive grant distribution for the month of April 2023 from the Child Care Relief Fund which Plaintiff is entitled as the early childhood education program did operate the last quarter of 2022 and had children enrolled who received subsidies for tuition.

IT IS ORDERED and DECLARED, Plaintiff is compensated for the months of closure imposed in the amount of six hundred thousand dollars to be disbursed immediately upon judgment allotting three days for mail delivery.

IT IS ORDERED and DECLARED, Plaintiff is granted 2% of the Department of Health and Human Services Commission Biennial Budget since 2011. To be arranged by wire in one sum directly deposited into Plaintiff's account within thirty days of judgment.

IT IS ORDERED and DECLARED, SBA EIDL 9898648209 for the Plaintiff to be forgiven upon judgment.

IT IS ORDERED and DECLARED, Plaintiff's direct and subsidies loans are forgiven MOHELIA 0003662254, and all loans for education hereafter for Plaintiff who is a lifelong learner be forgiven, upon judgment.

IT IS ORDERED and DECLARED, the harm brought forth by Defendant has caused financial hardship for Plaintiff, and for that reason all debt owed to creditors be paid in full. Plaintiff is to provide an account of debt to this Court upon judgment.

IT IS ORDERED and DECLARED, the harm brought forth by Defendant has caused further financial hardship for Plaintiff, as it pertains to the Internal Revenue Service, and for that reason, all debt owed is to be forgiven; Plaintiff to remain tax-exempt and sales tax exempt and free from loss of such exemption for any reason upon judgment.

It is ORDERED and DECLARED that all Orders for all Declarative Relief are GRANTED to Plaintiff.  Final Judgment for which let execution and all writs and processes necessary enforce this judgment.  All special interest in brining harm and injury to any extent in any manner for any reason at any time immediately ceases and gives no rise hereafter.  This judgment disposes of all claims and all parties and subjects in this matter and is not appealable.

 

 

_____

Date of Judgement

 

_____

Judge Presiding

EXHIBITS

A.      Childcare Regulation Provider Letter Implementing House Bill (HB) 525, 87th posted to
Defendant's website  https://www.hhs.texas.gov/sites/default/files/documents/cclhouse-bill-
525-provider- guidance.pdf


B.      Internal Revenue Service Letter Tax Exemption Section 501(c)3 indicating charity,
religious or other organization found essential as deemed by HB 525.


C.      Gmail ALL THINGS GOOD KIDS ACADEMY Texas State Exemption indicating charity,
religious or other organization found essential as deemed by HB 525.


D.      West Pastoral License, Educator indicating charity, religious or other organization found
essential as deemed by HB 525.


E.      Hart Pastoral License, Educator and Director indicating charity, religious or other
organization found essential as deemed by HB 525.

        Crittendon Ministerial License, Director indicating charity, religious or other organization
found essential as deemed by HB 525.


F.      All Things Good Kids Academy Website (screenshot) indicating charity, religious or other
organization found essential as deemed by HB 525.


G.      EMAIL HHSC Re: VOLUNTARY SUSPENSION (forced closure) This email communication
not only shows the Defendant's coercion regarding closure but an effort to prevent reopening
by threatening that the qualifications of a more than qualified Director were not sufficient.  The
director's license was issued eventually however the facility was reported as permanently
closed so it no longer impacted their efforts. Page 5. "not operating" and "close permanently" is

what was reported to childcare group Dallas County and Childcare Assistance Ellis County and other agencies cause the close the essential business.

H.      Workforce Solutions Letter Texas Rising Star Loss of Certification as a result of the Defendant's citing of staff in orientation.  This citing had an immediate impact, was upheld by administrative review; a SOAH hearing was requested however, has not been added to the docket as of July 2022.  This procedure is completely controlled by the Defendant and will not occur as it is beneficial for citing to remain until these efforts are satisfied.

I.      All Things Good Kids Academy Annual Curriculum indicating charity, religious or other organization found essential as deemed by HB 525.

J.      Texas Council for Corporations indicating other State of Texas organizations or institutions acting as agents on the Defendant's behalf to bring harm or injury to Plaintiff.

K.      Texas Department of Insurance indicating other State of Texas organizations or institutions acting as agents on the Defendant's behalf to bring harm or injury to Plaintiff.

L.      All Things Good Kids Academy Tour Request Form used to identify tours requested under false pretense by Defendant and its agents.  These tours became excessive and overwhelming in number.  This form of harassment was costly and brought financial harm, stress, and duress to the Plaintiff as tours were also given after 6 pm on weekdays and on the weekends.  The use of this form and questioning whether or not these persons worked for or were affiliated with the State of Texas end almost all tours; the difference in the number of tours requested was unexplainable.

M.      Health and Human Services Commission issuance of All Things Good Kids Academy Operating License #1453246 December 17, 2012.

N.      Department of Family and Protective Services issuance of Xavier L. Crittendon (Howard) Non-Expiring Directors License.


O.      SECTION 1.  Subtitle H, Title 10, Government Code, is amended by adding Chapter 2401 to read as follows: Sec. 2401.002.  ESSENTIAL BUSINESS; PROHIBITED, RESTRICTIONS. Sec. 2401.003.  RELIEF AVAILABLE. Sec. 2401.004.  IMMUNITY WAIVED.


P.      EMAIL HHSC Central Background Check Unit (CBCU) RE: BARR without RISK VALUATION. Page 3. Janet Kisler Indicates there was going to be a review by her chain of command.  There has been no response to date.   The response of Janet Kisler and Lorena Tapia was challenged as their making their decision was fragmented; 745.661 pg. 8, 745.667 pg. 5 and 745.645 pg. 3. Request for Risk Evaluation responded to on June 6, 2023 812am by Cyndel Shephard and forwarded to Loren Tapia on June 24, 2022 919am pg.10.


Q.      Advance Childcare our Child and Adult Food Program 3rd party indicates "z." before the facility name unofficially indicating the account is inactive though it is still accessible and usable by the Plaintiff.


R.      EMAIL HHSC 3rd Request to update portal:  Website indicates facility visibility restored (was inactivated by Defendant) but subsidies remain blank to prevent CCRF childcare relief funding that states a facility must be participating in and or have had children in care who receive subsidies for low-income families.  Per CCRF Texas Workforce Solutions controls this field who oversees CCA and CCG

                    EXHIBIT R1/4 HHSC Portal as of March 13, 2023 "Subsidies is blank vs Y"
                    EXHIBIT R2/4 Ellis County Agreement Updated
                    EXHIBIT R4/4 HHSC "system will automatically be updated".


S.      EMAIL HHSC Open Records Request (ORR) RE: INELIGIBLE BACKGROUIND CHECK; BARRED WITHOUT OPPORTUNITY FOR A RISK EVALUATION.  ORR response with no results

other than actual the citing itself and list of convictions indicating charges that result in a complete BARR from a childcare facility.  There was no verification of whether or not there was a threat to children and there was NO CONVICTION of any crime.

T.    Criminal History Requirement 26 TAC Code 745.661 (no risk eval performed never has there been a conviction of any sort on the record)

U.    Texas Health and Human Services (HHSC) Letter stating the essential business is suspended but actually the Defendant PERMANENTLY CLOSED and is requesting to RETURN THE PERMIT TO LOCAL CCL OFFICE.  See EXHIBIT G.  This closure was not agreed upon, it was forced as Plaintiff was coerced into requesting the type of closure as "Voluntary Suspension", then Defendant notified other agencies, departments of PERMANENT CLOSURE and forced other organizations and entities to end their rapport.  Even after returning to the facility, Defendant did not notify the other agencies and departments we were operational.

V.    HHSC Letter Invoice for Penalty w/comply by date of 5/24/2023 whereas today's date if March of 2023, and Plaintiff's Letter Requesting SOAH w/no response pg. 4; if compliance by the date passes before the SOAH hearing is granted then further penalty may apply..

W.    HHSC Minimum Standards for Childcare Centers Division 4. 746.1301 Professional Development Orientation is required and 746.1303 What must orientation for employees at my childcare center include? The employee must be present at the facility to complete orientation. Angela Johnson cited a deficiency for an employee who completed an initial background check through HHSC eligible to work.  Shortage of staff resulted in completing orientation as the applicant was supervised by the director.  There was no violation as the employee completed the initial background check, there was a shortage of staff, and the employee was supervised by the director of the facility.

X.      HHSC Minimum Standard for Childcare Centers 745.639 What Information will a notice letter that the CBCU sends to the subject of a background check include?  When a parent who was subject of an investigation was never notified, Plaintiff was barred without notification or opportunity for Risk Evaluation.  There was no opportunity to request a hearing A(ii) or B (ii) and the link lead to a webpage that did not provide directions on how to request the accuracy of information provided pg. 2.  Letter to Plaintiff pgs. 3-5 with background results states the childcare requested a background check and there was nothing indicating a SOAH hearing was able to be requested Link from the letter opened webpage CHILDCARE REGULATIONS BACKGROUND CHECKS, but no instructions found to question the accuracy of findings pgs. 4-7. See Texas Administrative Code EXHIBIT 15.

Y       GMAIL Texas Rising Star Impact Form; The latest date on the emails are August 30, 2023 and August 25, 2023.  These emails are requesting a signature for IMPACT documents that resulted from the Defendant's citing for not having a background check results for an employee going through orientation..  After careful consideration, Plaintiff declined to sign these documents as they are an acceptance of the determination and agreement to end participation.

Z.      EMAIL Advance Childcare Network Child and Adult Care Food Program (CACFP); November 1, 2022, requesting the Plaintiff submit a termination letter.  After careful consideration, Plaintiff did not submit a letter requesting termination as this would be a request and agreement to end participation and would seem as though we were not operating. There were three children enrolled and documented as such in their systems.

1.      IPhone 13Pro Max Diagnostics Mobile Resource Inspector; Pgs. 1-2 All devices for the Plaintiff reset, downloaded, extracted or some form or another transitioned or transmitted data without permissions, warnings or knowledge; Pgs. 3-4 Primary account holder was changed; Pgs. 5-8 TMobile Bill showing increased unexplained billing ACCOUNT at the top from left to right equals Account 101.69 (includes fee for SERVICES).  DETAILED CHARGES should be a detail of the ACCOUNT instead is an increase of $20 for three lines, taxes and fees and again

(fee for SERVICES) totaling 184.12. Then again at the very top of the bill TOTALS is 184.12 and again (fees for SERVICES) with a balance of 203.25, SERVICES was added three times to this bill and $20 for each line was added without Plaintiff knowledge or permission or consent. This is an effort to increase costs by acting as an agent for the Defendant whose elaborate effort is to eliminate revenue. Addendum pg. 1 explanation of area code 210 (San Antonia, Tx) as the change of password normally comes from the carrier in the form of seven digits, not a phone number (210) 361.3141 seen in this instance.

2.      Social Media Facebook page compromised as there appears to be a second login/user. The login difference is one letter "gb" instead of "fb". Defendant and its agents have penetrated and invaded Plaintiff's social media platforms.

3.      ProCare Software Childcare Management System

ProCare is acting as Defendant's agent in an effort to show cancellation of services was not forced by the Defendant. Access has been denied and a link to access information has not been provided to Plaintiff leaving clients with no access to client information, tax or payroll data, etc.; Pgs. 3-4 is an email last dated Monday, February 20, 2023, requesting cancellation repeatedly since January 2023 now incurring late fees. Explaining the form was submitted via DocuSign and did not allow for the correct selection of reason for cancellation; Pgs. 5-7 DocuSign form printed to paper as the electronic copy would not allow correct selection for canceling service – attachment to email; Pgs. 8-12 is an email last dated Wednesday, March 15, 2023, again requesting cancellation; Pgs. 13-15 DocuSign form printed to paper again – attachment to email; Pgs. 16 ProCare Software Childcare Management System (Screen Shot) After logging into the system the Default is SysAdmin, this is usually ADMIN; Pgs. 17-18 ProCare screenshot showing menu is greyed out and not able to be selected.

4. Educational First Steps (EFS)

These documents show Plaintiff was active with staff and children enrolled contrary to the recording of the TEAM meeting with Allease Lynce and her supervisor Calenthia Cheatham. Pgs. 1-2 Memorandum of Understanding emailed for signature before any communication with Plaintiff. Without thought was signed, dated December 1, 2022, and returned as requested. The change impacting rapport with the Plaintiff is a requirement to maintain a level 3 or 4 with TRS. Would like to request the recording of TEAM meeting see body language of EFS participants as they were under duress.; pgs. 3-9 email Tuesday, January 17, 2023 325pm. Survey completed and confirmed receipt; pgs. 10-11 email August 3, 2022, 721am. Eloomi Training; pgs. 12-17 Electronic Submission of Snapshot April 21, 2022, 938pm as this form indicates children were currently enrolled and Educational First Steps was Aware; pg. 18 Snapshot January 20, 2022, 233am; pgs. 22-24 Ethnicity and Enrollment Forms dated November 12, 2020, and September 3, 2020; pgs. 25-45 Staff training and emails indicating participation contrary to supervisor Calenthia Cheatham's statement during the TEAM meeting; Addendum: Team meeting invite Wednesday, December 14, 2022.

5.    HHSC Leslie Rodney arrived at All Things Good Kids Academy on October 17, 2022, which was the second opening still unaware the Defendant's forced closure was still in effect. Leslie Rodney arrived stating **"They gave me a list of things to ask for."** and proceeded to ask for thirteen items. Of the thirteen items Rodney Leslie had initially documented six citing and removed three before printing. The following are emails and attachments of the last printouts and the final citing of deficiency. Pgs. 1-8 is an email Monday, October 17, 2022 419pm forwarding attachment Form2396 citing a deficiency for HRC42.044 not allowing inspector to enter to conduct investigation, 746.3401 Annual Sanitation and 746.801(6) Required Records Maintained and only one child in care; pgs. 9-13 is an email Monday October 17, 2022 544pm responding to citing with attachments indicating insurance records were available and a notice of unavailability if ever insurance is not available as required by Minimum Standards for Childcare Centers Chapter 746 and response that the Defendants perform the Sanitation Inspection because of the rural location of the academy. Odd that an email stating corrections were made Tuesday, **October 18, 2022 931am was received with Form 2936 attached showing**

**HRC42.044 and a different code pertaining to infants THERE WERE NO INFANTS PRESENT.**
There was only one child over two years of age and able to sleep on a mat 746.2427. The
director was not made aware this code was added as there was no prior discussion. After
phone communication, the other codes would be removed and a corrected Form 2936 would
be submitted and administrative review was requested for what was believed to be the
remaining code. While the code is not a deficiency it is listed as investigated with a TA that can
be used against the Plaintiff later. **The use of code 746.2427 was not applicable during this
visit. HRC.044 was cited because new staff verified who the inspector was before entry.
There was an administrative review and the citing was reversed.**


6.     Wage Claim 22-021235-5 Tatonia Thomas

**EMAIL Monday, April 18, 2022, 233pm from State of Texas Workforce Commission Diana
Euresta who investigated the wage claim and found the Claimant was NOT entitled to 1445
for unpaid wages on April 25, 2022.** This Claimant refused to provide Employer (Plaintiff) work
information such as hours, application, etc., then filed a wage claim. There have been three
hearings to date and has shown coercion, hostility and badgering towards the Plaintiff while
favoring the Claimant. The State of Texas Workforce Commission action are disreputable and
have caused great emotional injury and physical strain and psychological harm and character
assassination against the Plaintiff and the ethics of the business and business practices and the
Plaintiffs character. Pgs. 1-9 EMAIL April 18, 2022, 233pm and attachments including a Wage
Claim Form and Wage Determination Order dated April 25, 2022; Addendum A1-A2 are Annual
Wage Claim Reports indicating no wage claims filed against the Employer as this is the integrity
of the Employer (Plaintiff).


7.     Checking Account All Things Good Kids Academy

Defendant and its agents have prevented online access. After an unsuccessful attempt to login
using the app, Plaintiff attempted to long via the banking website. Strangely the username ans
password did not work again so the reset method was attempted, and Plaintiff was able to
login. However, the data did not appear to be current. Plaintiff refreshed the screen was

automatically logged out and asked to reset the password again because the username and new password were not recognized. A second attempt to reset the password was made. Plaintiff chose a new password again only to receive a message that the username and password was not recognized. A third attempt to reset the password was made. Plaintiff chose a new password again only to receive the same message. The banker and teller could not explain the matter neither could the online banker. I eventually exclaimed the matter was above their authority. This effort is the same as all others, any electronic or online access has been denied the Plaintiff. Pg. 1 Teller print out Checking Savings Account History; Pg. 2 Message given via online and app after each password attempts.


8.      Attorney Brett Pritchard

All attorneys, as it pertains to the legal needs of the Plaintiff either recused themselves or refused to offer their services. After contacting hundreds of attorneys seeking legal support, it was realized the responses were not by happenstance but a result of the Defendant's effort to bring harm and injury to the Plaintiff by obstructing justice. Pgs. 1-2 EMAIL Friday, August 12, 2022, 1033am Attorney's paralegal Alicia states Plaintiff letter requesting SOAH hearing was received July 1, 2022, requesting the cause number; pg. 3 EMAIL Wednesday, August 17, 2022, with Letter dated Wednesday, August 17, 2022, 952am stating Plaintiff requested a valid and timely hearing with SOAH June 28, 2022. **THIS MATTER HAS NOT BEEN REFERRED TO SOAH**; pg. 4 December 7, 2022, Letter from the attorney recusing himself claiming **CAUSE EXCEEDS THE REALITY OF THE SERVICES THAT CAN BE PROVIDED** the Plaintiff's dissatisfaction without further communication.


9.      Internal Revenue Service Letter

Communication from the Internal Revenue Service (IRS) confirms suspicions the Defendants motive is to cause imminent injury and harm to the Plaintiff further indicating the involvement of the Federal Bureau of Investigation (FBI) in Plaintiff's affairs considering all instances of business rapport being terminated without cause, obstruction of justice, invasion of privacy, closure of all business in the state of Texas to include revocation of licenses, etc. pgs. 1-3

Internal Revenue Service (IRS) Letter dated July 19, 2022, **indicating the FBI notified the department of the Plaintiff's arrest**; pg. 4 Letter to the IRS explaining charge; pg. 6 facsimile confirmation.

10.    Defendant's Public Website

The Defendant's Public Website is maintained by the Defendant who has the responsibility of assuring information is current for public viewing when searching for childcare/early childhood education programs.  Defendant has not marked a "Y" for ACCEPTS CHILD-CARE SUBSIDIES as a two-fold purpose.  One purpose was that Defendant PERMANTLY CLOSED the Plaintiffs early childhood education program.   **CCA has corrected or updated its information according to the email from CCA on pg. 6; CCG Dallas County has not**.  The Defendant's public website still does not indicate that Plaintiff receives subsidies after Defendant was notified of the update.  The response from the Child Care Relief Fund is eligible for payment in April of 2023 there must be a referral between 6/1/2021 – 11/30/2022 and to remain eligible.  **Defendant has placed blame on TWC and CCA for the portal not being updated when in fact Defendant REFUSES TO UPDATE THE PORTAL** (Defendant must log into a portal to make updates that will reflect on the public website**). The defendant is capable of updating the Defendant's website at will and is fully aware the Plaintiff does not have such a security level.**  Defendant's intention is to cause an undeniable, insurmountable injury and harm to Plaintiff. Pg. 1 EMAIL Sunday, March 12, 2023, 448pm to CCG Dallas, Provider Portal showing blank for subsidies; Referral during eligibility period pg. 10.15 Chatman, pg. 10.17 Young, pg. 10.18 Porter, pg. 10.19 Jordan; pgs. 5-6 EMAIL from CCA Ellis County indicating contract/provider eligibility "up to date"; pgs. 8-9 EMAIL Thursday, April 12, 2018 Defendant documents changes made to the public website; pgs. 11-12 provider portal login page and what providers can do.

11.    American Express

Strangely, in the month of August 2022 when the strong arm of Defendant and its agents seek to bring harm and injury to the Plaintiff by isolating, terminating all business rapport and dissolving all financial opportunities, offers from American Express with an UNLIMITED LINE OF

CREDIT for all three business arrive (All Things Good Kids Academy (ATG), ANV Concepts Home Health Services (ANV) and Taxology101, Inc.).  Plaintiff only accepted Taxology101 Inc. Defendant has been able to PERMANENTLY CLOSED both ATG (an early childhood education program) and ANV Concepts Home Health Agency (healthcare provider services) as they both require licensure via Defendant.  However, Taxology101, Inc. falls under the federal government which is why Defendant and its agents are diligently seeking to cause Plaintiff to an error in practice.  Pgs. 1-3 mail envelopes American Express offers to all three businesses; pg. 4 screenshot of AMEX App showing NO PRESET SPENDING LIMIT, pg. 2 picture of two AMEX Unlimited Cards; pgs. 6-24 agreements.

12.    ANV Concepts Home Health Agency LLC.

       Texas Unified Licensure Information Portal (TULIP)

$260K lost revenue in a single instance because of the Defendant's efforts.  This is certainly harm, heart stopping as Plaintiff was able to login to Defendant's portal but not able to save changes.  After repeated efforts a ticket was created by calling the help desk and while waiting for the error to be corrected too much time passed and Plaintiff was not able to update licensure information (all information remained the same only the payment for the renewal needed to be made).  As of the final email apologizing for the delay, the administration had already closed the account and Plaintiff had already accepted responsibility.  Pgs. 1-3 EMAIL TULIP Support explaining the delay in allowing access to the system.  The delay resulted in Plaintiff being unable to log in and submit payment for renewal of licensure.

13.    Smart Fax

Smart Fax is the online fax service used for business by Plaintiff.  Just as all online accesses were not accessible, Smart Fax indicated the account was "unknown".  There was no payment due and no other cause for this accessibility to be taken away without reason; Defendant has been able to isolate Plaintiff by removing from normal habits and behaviors to living out of fear and concern for life and livelihood, psychological harm, and damage.

14.    Taxology101, Inc.

Taxology101, Inc. falls under the federal government which is why the Defendant's, and its

agents are diligently seeking to cause the Plaintiff to error in practice.  Defendant is not able to

close this business as it does not have oversight.  Julie De Le Rosa, a suspected agent on behalf

of the Defendant, and individual met through LaShonda R. Tillis, a suspected agent on behalf of

the Defendant, submitted an email requesting that I complete a tax return for the year 2022

based on numbers for the previous year.  She was informed that the practice would be

unethical and that she had to provide current information for the year 2022 and original

documents and signatures had to be obtained prior to electronic submission.  There have been

several calls from Houston, Austin, San Antonio, and Arlington requesting financial support

without following through with the required original documents or proof of identity, etc.  The

individuals have decided to have someone else complete their financials.   Pgs. 1-3 EMAIL

Monday, February 27, 2023, 541pm Julie requesting 2022 tax returns for Clarks.


15.    Texas Administrative Codes Administrative Reviews and Due Process Hearing

**40 TAC 745.113, pgs. 15.1-2 Who can request a due process hearing?**  EXHIBIT X is a letter

from the Defendant to the Plaintiff that does not provide an opportunity for a RISK

EVALUATION, ADMINISTRATIVE HEARING or DUE PROCESS HEARING when barred from the

facility despite the regulation set forth in the Minimum Standards for Childcare Centers as

according to 40 TAC 745.113.  According to TAC Defendant should have notified persons the

adverse actions that were taken against and the operation of their option for an administrative

review and due process hearing options.  The Defendant INFRINGED UPON THE PLAINTIFF'S

RIGHT AND THE GUARDIAN'S RIGHT TO DEFEND THEMSELVES.

**40 TAC 745.8843, pgs, 15.3-4 What happens after I make a request for a due process hearing?**

Plaintiff's attorney Brett Pritchard's letter indicates a request was received timely requesting a

SOAH hearing.  The request has not been received for the docket!  This is a clear indication the

request is being held, not that there is a backlog and no date is available.  According to 40 TAC

745.8843 (a) upon receipt, an administrative law judge should have been appointed by SOAH

and a hearing should have been scheduled no matter how far out the date is see 40 TAC

745.8843 (b).  In this matter, Defendant has maliciously caused the request to be hindered, and paused to accomplish an agenda to bring harm to Plaintiff.

**40 TAC 745.8853, Pgs. 15.5-6 What action must the HHSC take after the final decision in a due process hearing?**  After the SOAH hearing when the honorable judge ruled in favor or the Plaintiff, Defendant allowed the citing to remain visible on the Plaintiff's record for five years.

**Pgs. 15.6-7 SWORN AFFIDAVIT from guardian stating he was never notified of an investigation nor its outcome, did not provide his information via affidavit nor application, and did not give any other person permission to provide his information for employment or investigation.**

16.    Advance Childcare Network (ACN)

Our Child and Adult Care Food Program (CACFP) third-party administrator is supposed to support the Plaintiff by causing efficiency in meal service.  This agreement becomes a hardship when the contractual agreement becomes less of a support and more of a web of sorts.

**Unfortunately, the Plaintiff's rapport was FORCED TO END upon receipt of a letter dated August 3, 2022.  The letter marked a change in center operational days/times and meal service times as previously discussed and agreed; however, without the Plaintiff's knowledge the letter indicated a license expiration date of 12/17/2022 – the license is not expired.   In October the Defendant had taken such drastic measures to harass that Plaintiff and staff became fearful for themselves and children in care.  There was a high volume of calls and requests for tours with no enrollment.   When we realized we were under attack we considered ending our rapport rather than waiting for the Defendant to cause ACN to fraudulently cite deficiencies and destroy our public record as other have attempted in the past; not realizing a decision was already made to end our rapport as of August 3, 2022, the date of the letter. Pg. 1 Letter of Change August 3, 2022, Center Operational Days/Times, Meal Service Times; pg. 2 License/Registration Information Line A6. License Expiration Date 12/17/2022.   Pgs. 8-13 lists (snap shots) of children and training indicating we were open and operational for the past years contrary to Education First Steps (EFS).  And, preparing for a great year in 2023 by hiring new staff and increasing enrollment.**

**17. PARENT STATEMENTS**

**Parents who were receiving subsidies for childcare services were told our facility was closed. The Defendant forwarded a list of facilities to be PERMANENTLY CLOSED.  We were FORCED TO CLOSURE unaware in August of 2022, that we were not locatable, and deemed nonoperational to everyone which is why the Defendant's agents flooded the facility with fake enrollment efforts and phone calls in an effort to cite deficiencies to find a reason to rightfully close the facility as a cover for their ill effort to bring harm to the Plaintiff.  Since their continued failure to cite for deficiencies that will uphold, drastic efforts to expand harm and injury have been enforced.**

18.     ATT arrived at All Things Good Kids academy to install the latest wiring in 2022.  Then without warning.  A gentleman arrived at the facility without further notice and brought a box, only staff was present and they did not question the actions.  There is only one business line for the academy. Whenever you answer the business line (line 1) the other line picks up (line 2).  When we pick up line two it lights up but of course there is no dial tone.

19.     This section of documents indicates our second reopening after we realized the effort to permanently close the facility, not knowing we were already FORCED TO CLOSE.  At the end of 2021 we were told he had to close for 90 days as that was the only type of closure.  We reopened in February of 2021.  When we noticed we were under attack by the Defendant and its agents we were under the impression we had to request the same type of closure but this time we were told we could reopen at any time.  However, this time the Defendant FORCED OUR CLOSURE as they notified all that we were PERMANENTLY CLOSED – they did not do this in 2022 so we were not on the lookout for this effort.   The request for our license to be returned to the department and a letter of closure was not performed in 2021 and this effort was not told to the Plaintiff until an email was received by the Plaintiff.  The Defendant arrived at the facility at reopening September 19, 2022.  If the objective was not a PERMANET CLOSURE the Defendant should not notify All that the Plaintiff was operating as of that date.  Instead the

Defendant continued to ensure separation, closure and termination of all business as it pertains to the Plaintiff.

19      Fake Applicants

20.     This section of documents shows how simple it is to cite deficiencies frivolously. Susan Marbut and Mia Rawlins.

21.     This section of documents to indicate the citing made by Leslie Rodney on October 17, 2022 (the day of our reopening) indicating our refusal to allow her entry to conduct and "investigation". We just opened, and we had one child the Defendant was informed of via Advance Childcare Network our third-party food program, there was No Report to result and Investigation. This was mere harassment. The citing was NOT UPHELD.

22.     Reivax Doyen Project building homes for Veterans have ended because of Defendant

23.     Attorney and agent for the Defendant has been trying to gain original documents of a quiet deed transfer case.

✳ misc copies

Recordings USB:

Childcare Group Dallas County confirms forced closure without Plaintiff's knowledge or consent.

Texas Workforce Commission Hearings indicating the department's coercement and hostility.

Educational First Steps Michell Watts Paul contradicting EFS reason for forced separation.

Ovilla Police Department notifying the subject of a police report that a report was filed.