IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

**FILED**

May 08, 2023

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____

JF

DEPUTY

XAVIER L. CRITTENDON, Plaintiff.

v.

STATE OF TEXAS HEALTH AND

HUMAN SERVICES COMMISSION, Defendant

Case No. 1:23-CV-00327-LY-SH

Table of Contents

JURISDICTION                                                          4

CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED                     4

FEDERAL QUESTION                                                      6

CLAIM                                                                6

STATEMENT OF THE CASE                                                8

CONCLUSION                                                           10

REASONS FOR GRANTING                                                11

PRAYER                                                              12

LISTED DEFENDANT                                                     20

ORDER FOR IMMEDIATE INJUNCTIVE RELIEF                               24

ORDER FOR IMMEDIATE DECLARATIVE RELIEF                              26

EXHIBITS                                                             28

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION


XAVIER L. CRITTENDON,

Plaintiff.

v.                                                    Case No. 1:23-CV-00327-LY-SH

STATE OF TEXAS HEALTH AND

HUMAN SERVICES COMMISSION,

Defendant.


## **AMENDED COMPLAINT AND REQUEST FOR INJUNCTION**

Plaintiff filed a COMPLAINT AND REQUEST FOR INJUNCTION on March 24, 2023, and gained access to PACER on May 3, 2023, to find Defendant Filed MOTION TO DISMISS without proper service to Plaintiff who registered for an account in PACER that was not ACTIVE and whose filing displayed an incorrect email address for the Plaintiff.  Plaintiff responded to Defendant's Motion to Dismiss with a MOTION TO CONTINUE COURT FINDS IT HAS JURISDICTION AND PLAINTIFF'S ANSWER TO DEFENDANT'S MOTION TO DISMISS on May 5, 2023, by electronic upload.

Magistrate Susan Hightower filed a PROPOSED FINDINGS AND RECOMMENDATIONS approximately April 14, 2023, with Plaintiff's ORDER AND OBJECTIONS TO PROPOSED FINDINGS AND RECOMMENDATIONS DUE TO PLAIN ERROR on April 27, 2023.

Plaintiff, COMES before the Court with an AMENDED COMPLAINT AND REQEUST FOR INJUCTION, declaring this Court has jurisdiction and power to rule this case arising under federal law. Rule 12(b)(1) as the Eleventh Amendment DOES NOT BAR SUITS AGAINST STATES UNDER FEDERAL QUESTION.  The AMENDED COMPLAINT AND REQUEST

FOR INJUNCTION to be considered before any other challenge thus revoking the States enactment of immunity and sovereign immunity.

### Basis for Jurisdiction

The United States CONGRESS consisting of 100 senators (two from each state) and 435 voting members of the House of Representative and by signature of the Governor of the State of Texas has COMMISSIONED through the Texas Protection of Religious Organization Act, TEX. GOV'T CODE ANN. § 2401.002 (West 2021) for Plaintiff to seek RELIEF in this suit. Sec. 2401.003. RELIEF AVAILABLE. (a) A person may assert a violation of Section 2401.002 as a CLAIM or defense in a judicial or administrative proceeding and obtain: (1) injunctive relief; (2) declaratory relief; and (3) court costs and reasonable attorney's fees. (EXHIBIT 112). Plaintiff presents this Court with Federal Question.

### Standards

This Court finds Plaintiffs complaint is NOT ALONE; IS SUPPLEMENTED BY DISPUTABLE FACTS; and is supported by the Court's resolution that Plaintiff "HAS DEMONSTRATED EXISTANCE". (Defendant's Motion to Dismiss; Page 1, paragraph 1 Sentence 2)

**A. Rule 12(b)(1)[5]**

This Court finds it has jurisdiction and has power to rule this case arising under Federal Law and Question. Rule 12(b)(1). **The United States Congress has commissioned** through the Texas Protection of Religious Organization Act, TEX. GOV'T CODE ANN. § 2401.002 (West 2021) **for Plaintiff to seek Relief**. Sec. 2401.003. RELIEF AVAILABLE. (a) A person may assert a violation of Section 2401.002 as a claim or defense in a judicial or administrative proceeding and obtain: (1) injunctive relief; (2) declaratory relief; and (3) court costs and reasonable attorney's fees.

**B. Rule 12(b)(6)[4]**

This Court finds Plaintiff's Complaint "raises a right to relief above the speculative level" based on facts presented. The Supreme Court held in the 1821 case Cohens v. Virginia that a case "arises under" the Constitution or laws of the United States "whenever its correct decision depends on the construction of either," and that cases arising under federal law include all cases

that "grow out of the legislation of Congress, whether they constitute the right or privilege, or claim or protection, or defense of the party, in whole or in part, by whom they are asserted."[1]

And, because cases that fall within the narrower statutory grant of federal question jurisdiction also fall within the broader constitutional grant, most court cases considering the scope of federal question jurisdiction focus on application of the relevant jurisdictional statute and do not reach constitutional questions[2].

---

[1]See, e.g., 18 U.S.C. § 3231 (granting the federal district courts "original jurisdiction, exclusive of the courts of the States," over federal criminal proceedings); 28 U.S.C. § 1257 (granting the Supreme Court appellate jurisdiction over "[f]inal judgments or decrees rendered by the highest court of a State" in cases arising under the Constitution or federal laws or treaties); id. § 1334 (granting district courts jurisdiction over bankruptcy cases); id. § 1337 (granting district courts jurisdiction over antitrust cases).

[2]See, e.g., Romero, 358 U.S. at 379. Congress first enacted a statute granting the federal courts general federal question jurisdiction in 1875. Act of March 3, 1875, § 1, 18 Stat. 470 (codified at 28 U.S.C. § 1331(a)). The 1875 statute, like the current federal question statute, used language similar to that of the Constitution. Early cases interpreting the statutory language relied heavily on Chief Justice Marshall's construction of the constitutional grant of jurisdiction. See, e.g., Pacific R.R. Removal Cases, 115 U.S. 1 (1885).

[3]LII Electronic Code of Federal Regulations (e-CFR) Title 10 - Energy CHAPTER I - NUCLEAR REGULATORY COMMISSION PART 73 - PHYSICAL PROTECTION OF PLANTS AND MATERIALS Subpart F - Physical Protection Requirements at Fixed Sites § 73.54 Protection of digital computer and communication systems and networks.

[4]See Fed R. Civ. P. 12(b)(1).

[4]See Fed R. Civ. P. 12(b)(6).

**Federal Question**

1. Did the Defendant, THE STATE OF TEXAS and HHSC violate the Texas Protection of Religious Organization Act, TEX. GOV'T CODE ANN. § 2401.002 (West 2021); (1) at any time, including during a declared state of disaster, prohibit a religious organization from engaging in religious and other related activities or continuing to operate in the discharge of the organization's foundational faith-based mission and purpose; or (2) during a declared state of disaster order a religious organization to close or otherwise alter the organization's purposes or activities, causing harm and injury?

2. Did the Defendant infringe upon the federally protected CONSTITUIONAL RIGHTS of Plaintiff by PERFORMING ACTS that PREVENTING ENACTMENT OF THE STATES RIGHT TO IMMUNITY AND SOVERIGN IMMUNITY; to include impediment of justice in lower courts and administrative regions, corroboration with other state agencies and corporate entities to bring harm, collaborating with federal, state, county and local authorities resulting in an imminent threat to Plaintiff's life and livelihood causing permanent injury?

3. Did the Defendant breech the realm of Cyber Security by ACTS found relevant to 10 CFR § 73.54 - Protection of digital computer and communication systems and networks. "Compromise, meaning disclosure of information to unauthorized persons, or a violation of the security policy of a system, in which unauthorized intentional or unintentional disclosure, modification, destruction…"?

**Plaintiff's Claim**

A.  Plaintiff CLAIMS the Defendant not only infringed upon CIVIL RIGHTS including the right to be free from discrimination, the freedom to worship as we choose, the protections of due process, but also infringed upon federally protected, CONSTITUIONAL RIGHTS including the First Amendment Religious Freedoms; Fourteenth Amendment Due Process and Protections all bringing harm and injury; life and liberty.

B.  Plaintiff, CLAIMS the Defendant violated the Texas Protection of Religious Organization Act, TEX. GOV'T CODE ANN. § 2401.002 (West 2021) and presents this Court with Federal Question.

C.  Plaintiff, CLAIMS Defendant's reference to Plaintiff's Complaint as frivolous though factual evidence giving premise to this suit has been presented by exhibit identifying email communique between the Defendant and the Plaintiff that includes Defendant's names, dates,

times and offices held where there is a DEMAND TO RETURN THE LICENSE of a faith-based essential business, EXHIBIT G (PGS. 3,5); email communique  between Plaintiff and Defendant REFUSING TO DISTRIBUTE FEDERAL FUNDING allocated for a declared disaster for which Plaintiff was in need and qualified for EXHIBIT R, etc., thus Defendant's random claims of frivolous and false allegations are MOOT.

D.   Plaintiff CLAIMS Defendant infringed upon federally protected CONSTITUTIONAL RIGHTS; by performing ACTS NOT PROTECTED by the CIVIL RIGHTS ACT, 42 U.S.C.1983, including IMPEDEMENT OF LEGAL SUITS IN LOWER COURTS (298th District Court Ellis Country, 301st District Court Dallas Country, and 40th District Court Dallas County and under Administrative Jurisdiction by PREVENTING THE RIGHT TO DEFEND AND OBTAIN COUNSEL associated with the State Bar of Texas; 18 U.S.C. § 1503 defines as "obstruction of justice" as an act that "corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice." and,

E.   PREVENTING ACCESS to Texas E-File Systems to file on suits in Lower Courts and be able to defend self (cyber security) (EXHIBIT USB); and,

F.   LOCAL, COUNTY and STATE police stalking, intimidating, not recording and providing police report case numbers, offering NO PROTECTION with reports of threats (EXHIBIT USB); and,

G.   CORPORATE ENTITIES ENDUCE TERMINATION OF SERVICES and CONTRACTS (EXHIBIT USB); and,

H.   STATE AGENCIES PROVOKED to PERFORM AUDITS, Texas Workforce Commission refusal to distribute state funding and federal grants during a declared disaster, preventing access to online account registration to perform quarterly tax reporting (EXHIBIT USB); and,

I.   Federally funded HIGHER EDUCATION INSTITUIONS to CAUSE FAILURE by forced class overload, elimination of flexibility and staged courses (EXHIBIT USB); and,

J.   FEDERAL AGENCIES ENTICED TO MONITOR including Internal Revenue Service with REVERSAL of AGREED ADJUSTMENTS from 2018, with DRAKE Accounting Software creating errors with tax filings and prevention of other submissions of tax filings (cyber security) (EXHIBIT USB); and,

K.  United States Postal Service by holding mail to PREVENT RECEIPT of FEDERAL FUNDS, NOTICIES OF COURT PROCEEDINGS and other legal documents (EXHIBIT USB).

L.  Cyber Security Breech including ZOZI Smart home security systems, ADT security alarm systems and RING camera systems all controlled to monitor and gain access to private domain; T-Mobile and Verizon cellular services by preventing, rerouting or impeding calls; digital devices to mask and prevent access to information; controlling printers, laptops, computer's ability to operate or function properly; mirroring or gaining access to pertinent information and data (EXHIBIT 1-3, 18.3, EXHIBIT USB).

## STATEMENT OF CASE

The Defendant violated Texas Protection of Religious Organization Act, TEX. GOV'T CODE ANN. § 2401.002 (West 2021) by forcing the CLOSURE of Plaintiff's essential faith-based business during a declared disaster.  In November of 2021 Plaintiff requested to close for a few days and was informed all closures were for a duration of 90 days.  Plaintiff's staff was exhausted due to extended hours of the business operation and additional procedural and cleaning an sanitation requirements of staff to assure the health and safety of children in care, staff, vendors and entire community.  Closure was requested by the Plaintiff via email for the 90 days.  The exact closure and opening dates were announced to the Defendant, parents, vendors, Childcare Group Dallas County, Childcare Group Ellis County and all other affiliates. The Defendant required a "walk through" before opening and enrolling or re-enrolling children EXHIBIT 19.1 and EXHIBIT 5.  The Plaintiff's essential faith-based business opened in 90 days without complication.

After re-opening, plaintiff noticed and increase amount of phone calls and tours but no enrollment.  The tours then became suspicious because the phone numbers all contained area codes known to be associated with the Defendant.  After, putting in place a procedure to ask if the tour was affiliated or associated with the State of Texas, the tours stopped.  Phone calls then changed to questions regarding rates, number of staff to children and other procedural questions typically not asked of parents who are looking for a facility to love and nurture their child.  Calls then monitored and call backs were made to find there was no child by the name given, or confusion about dates childcare was needed and the child's name and other pertinent information.  It was then assumed the calls were "fake".

A total of three families enrolled, they all paid cash and stayed approximately one week.  Even though there is a NO REFUND POLICY, the refund was granted because the duration of care was so short.  Other affiliates were not including the facility staff in conferences, meetings and other common activities.  The CACFP food program service third party was no longer monitoring quarterly or requesting

records of food service, etc.  The Defendant seemed to disappear except for emails "threatening closure or deficiencies" if there was no response to the communique by a certain date or time, in some instances the deadline was the same calendar day by midnight. Staff was ready to work, volunteers were arriving and leaving because there was no business.  Unable to make sense of the matter, Plaintiff informed Defendant of concerns and was told the facility could close and open again without having to close for 90 days.

The Plaintiff married a gentleman Arthur Patterson after only a few weeks of meeting him.  He proved to be aggressive so there was an agreed separation; Arthur resided in his home located in DeSoto, TX as stated in the Divorce Decree.   One evening he arrived at Plaintiffs home and forced entry. Plaintiff pulled out a gun, called the police and was asked to put the gun away and run out the home to safety.  The Ellis County Sherriff arrived and arrested the Plaintiff who now faces charges of "aggravated assault with a deadly weapon against a family member" that prevented presence at the business operation. Those charges should have undergone a "risk evaluation" to determine if the Plaintiff was a threat to children – that right was not given to date.  The Plaintiff was BARRED from the business operation.  A Staff was selected to carry on as Director because of over twenty years of experience and a degree in Education with a Major in English **EXHIBIT 15, EXHIBIT 83.1-83.228 and EXHIBIT 88.**  Plaintiff requested a Waiver and Variance to amend and off leniency for wait periods for hiring staff to fill the void of absence as well as other procedural leniencies as staff are unfamiliar with all the tasks of Director **EXHIBIT 19.5.** Arthur Patterson text stating charges were being dropped **EXHIBIT 120**

The Defendant, Angela Johnson2, arrived at the facility to cite a college student who cleared initial background through HHSC and was pending FBI results for being present at the operation though she was not counted in ratio.  There were only twelve students present which is permissible for one caregiver, the Director was in the classroom.  Usually there are two staff present but one had a family emergency, and the classes were merged still without deficiency as the facility was in ratio.  Plaintiff assured the facility was under ratio in her absence BARR from being present.  The Waiver and Variance **(EXHIBIT 83.22)** would have addressed this matter and prevented opportunity for citing for deficiency.

Unfortunately, the citing was upheld, stating the staff could not be present without completed FBI results and a "wavier and variance" was not requested. When in fact the Minimum Standards for Childcare Centers indicate long as another qualified Staff is present and for the sake of "orientation" the staff could be present. **EXHIBIT W.**

Parents and guardians were refused childcare services through Childcare Group Dallas and Childcare Assistance Ellis County.  **EXHIBIT 17.1 to EXHIBIT 17.4.**

Plaintiff proceeded to request closure to take time to accesses the multiple issues at hand in August of 2022.  What should have been an ease of transition became a THREAT OF PERMENANT CLOSURE as the Defendant stated repeatedly, she had not received the change of Control Forms needed to approve the selected Director for the role.  The information was forwarded repeatedly and not received excuse after excuse.  The documents were then forwarded to another supervisor via email who received all documents EXHIBIT.  Defendant began to refute the selected candidates' qualifications as a director. The selected candidate was permitted to act in the role of Director after argument of qualifications and the certificate mailed.  Finally, Defendant instructed Plaintiff to RETURN the facility's license. These, threats to PERMENANTLY CLOSE the faith-based essential business resulted in a premature opening date.  The Defendant was notified of the date of opening but did not respond to communique with a confirmed date for the walk through, again that must take place prior to enrollment or re-enrollment to assure the health and safety of children. EXHIBIT and EXHIBIT USB.

**Plaintiff was not aware the Defendant had ALREADY CLOSED the faith based essential business by notifying Childcare Group Dallas County, Childcare Assistance Ellis County and removing eligibility for subsidies from their portal, seen on website. EXHIBIT10.13.** EXHIBIT USB Defendant then began to influence all other affiliates to end rapport and or terminate agreements. EXHIBIT and EXHIBIT USB

The Defendant arrived at the facility on the day of opening.  Had children been enrolled it would have resulted in a citing; however, when asked about the effort EXHIBIT USB, Defendant exclaimed it WOULD NOT be a citing and that it WAS REQUIRED before enrolling children in the very moment. This contradictory and intentional behavior could have resulted in a citing for deficiency. The facility re-opened with no complication on September 19, 2022, or so it was assumed.  EXHIBIT USB.

There was no enrollment, no confirmed tours, etc. upon re-opening.  And, about a month after reopening, on October 12, 2022. **EXHIBIT 5**, Leslie Rodney arrived at the facility stating she had to perform a "walkthrough" to assure the safety of children in care or we would have to close.  This effort that had already been performed by Angela Johnson on September 19, 2022, and was not required to be performed twice.  Unannounced and unknow Leslie Rodney's information was verified before entry into the facility.  Upon entry Defendant, Leslie Rodney said, "I have a list of things THEY gave me".  Leslie Rodney had a list of twelve items she requested for audit and completed documentation citing for approximately six deficiencies before communicating with staff only to remove all of them as Leslie Roberts overlooked the information **EXHIBIT5**.  The Defendant did however cite a deficiency for preventing immediate entry when staff asked for her badge information and called to verify her identify. The citing was NOT UPHELD. EXHIBIT

**To date there has been no OFFICIAL CLOSURE of Plaintiff's faith-based essential business; but a PERMENANT CLOSURE caused by ALTERING its ability to operate and conduct business as usual.**

Defendant proceeded to cause closure of Plaintiff's essential home health services business for failing to renew license by the deadline and completion of tiny home project for Veteran's by preventing installation of water lines and REMOVING the TRANSFORMER but continuing to bill for service **EXHIBIT 22, 23, 94**. Portals were not accessible to submit renewals and license were not renewed to continue operating the business. The Federal Bureau of Investigations (FBI) contacted the Internal Revenue Service (IRS) to inform of arrest, causing Plaintiff's electronically filing status be place in "special status".

**RULING AND JUDGMENT IN LOWER COURTS**

301ST JUDICIAL COURT DALLAS COUNTY Case No. DF 23-00638

443RD JUDICIAL DISTRICT COURT DALLAS COUNTY Case No. 104609

298TH JUDICIAL DISTRICT COURT DALLAS COUNTY Case No. DC-22-16132

**RULING AND JUDGEMENT IN ADMINISTRATION**

TEXAS WORKFORCE COMMISSION Claim No. 051235-5

STATE OFFICE OF ADMINISTRATIVE HEARING No Background Check

HEALTH AND HUMAN SERVICES Citing for No Background Check

ELLIS COUNTY SHERRIF DEPARTMENT charges without a case filing

**CRIMINAL CASE NOT ASSIGNED**

Ellis County Sheriff Department "open case" charges for Felony Assault  Arthur Patterson text saying charges were being dropped **EXHIBIT 120.**

**MATTERS RESOLVED UPON JUDGEMENT**

1. Claim No. 05123-5 Only claim in over thirty-four years as an entrepreneur that Plaintiff did not pay for work performed.
2. Impeded RISK EVALUATION FOR BARR dissolved as charges with Ellis Country are dissolved.

3. Suit for Quit Deed settled as Plaintiff has Original Signed Contract and two Intent to Sell documents and has fulfilled the contractual obligation.  Two properties will be granted to Plaintiff.

4. Marriage to Calvin E. Richardson dissolved and charges against him will stand.

5. Malpractice suit settled holding opposing parties accountable with State Board of Dental Examiners and to the Plaintiff for misrepresentation as an expert and actions to alter Plaintiff's decision to gain care from a preselected dentist, pain and suffering, damages, and exemplary damages awarded Plaintiff.  Opposing party in this matter is unethical and committed criminal acts, lacks empathy and was unapologetic for the harm and injury caused and should never hold license in any state. Opposing party's actions were reckless and lacked good judgment, risking the life of the Plaintiff.

6. Suit to vacate property regarding 443RD JUDICIAL DISTRICT COURT DALLAS COUNTY Case No. 104609 in local courts Justice of the Pease Precinct 4 Place 1, Ellis County 301 N. 8th Street, Midlothian, Texas 76065 Case No. LT2734 and LT2733.

7. Internal Revenue Service reversal of abatement, additional charges, insurance charges, and all other unexplained actions to increase balances for both business and personal accounts. Defendant's actions have resulted in an inability to resolve tax matters and in fact caused them to become exorbitant amounts that would result in loss of professional rapport with Taxology101 Inc (Efile, PTIN and Professional Tax Preparer)

8. Ellis Country Sherriff Department closure of "charges not assigned" be dismissed.

9. Nations Direct Mortgage who is causing Plaintiff to lose her home by indicating a missed payment resulting in a **breech of contract notices was reversed EXHIBIT USB Nations Direct Mortgage**.  The portal used to make payments was not accessible to see a payment had failed (cyber security) then the app for WellsFargo as well as the online portal was not accessible (cyber security).  Plaintiff called Nations Direct Mortgage to understand what was happening and a payment was made through Western Union Quick Collect "over the amount due".  The additional amount was distributed to fees, escrow and principle.  The Agent proceeded to complete a workorder requesting the over payment be credited back to the account and the difference of $2171.30 be paid.  **EXHIBIT115.1-115.13.**   An

amortization schedule showing great change in amount of principle, interest and escrow. **EXHIBIT115.1-115.13.** A letter indicating a NOTICE OF **BREECH EXHIBIT 115 and EXHIBIT USB Nations Direct Mortgage.** A letter dated April 13, 2023 was mailed on April 21,2023 delaying the knowledge of information for over a week. **EXHIBIT 115.14.** Nations Director Mortgage is taking steps to POSESS PLAINTIF'S HOME by notifying of breech in writing without reversal in writing, decreasing the amount paid the following month as if a credit is being applied and stating the breech was reversed. **EXHIBIT USB Nations Direct Mortgage**

10. North Texas Toll Administration NTTA and Texas Department of Motor Vehicles will stop mailing fraudulent notices in the name of Dustin Huckabee and Starlette U Bennettt. Other State Agencies are sending mail in fictitious names such as Starlette U. Bennettt.

11. The Internal Revenue Service is CORRECT THE REVERSAL OF 2018 abatement. A letter received from the IRS indicating I requested the change where 2018 was a $0 balance. **EXHIBIT 118.**

12. The City of Ovilla will halt all fictitious notices.. **EXHIOBIT 119.**


**Statement of A Separately Identifiable Suit Filed on May 1, 2019,**

**See. Defendant's Motion to Dismiss and Order and Report and Recommendations of The United States Magistrate Judge (sec I, page 2, paragraph 2)**

Defendant's behaviors are usual, customary an normal; thus, while the acts are separately identifiable from this matter the behavior to cause harm and injury are the same. Defendant's repeated unlawful use of intimidation against a citizen and damaging the emotional and mental well-being through actions and words spoken and written https://forthepeople.com was first noted in the year 2011 when the Defendant's agent Walter Rideaux found the Plaintiff serving as Director for an early childhood education program that had never been cited for a deficiency. Walter Rideaux responded to that finding by boldly proclaiming "Let's see what we can do about that", Walter Rideaux began citing the facility via the mail. Walter Rideaux would visit the facility and leave without indicating there was any finding or potential finding of deficiency and since the area is rural the mailbox was compromised, and all the mail went to a P. O. Box. Since the Plaintiff was unaware of this effort the citing for deficiency remained in the P. O. Box past the deadline to request an Administrative Review to contest the deficiencies.

Walter Rideaux cited a deficiency that none of the facility's twelve staff had background checks, a "high citing".   Since the background checks were in paper form and had original signatures and dates that indicate the fingerprint based background checks were performed, he was willing to correct the citing for deficiency.  However, the Defendant's agent, Supervisor Kimberly Johnson refused to respond to Walter Rideaux's request to allow access to the system and correct the citing.

After, escalating the matter to Kimberly Johnson's manager, Defendant's agent Connie Presley, an invitation was extended to meet to discuss the matter.  Plaintiff arrived at Connie Presley's office only to find there would be no change to the citing discovered via the mail, regardless of the indisputable evidence that Walter Rideaux's citing for not performing background checks on twelve employees was inaccurate.  These citing are considered "high" and impact the facility's rapport with the many school systems that are serviced, hiring events with Texas Workforce Commission (TWC) **EXHIBIT Secc 84 and EXHIBIT USB TWC HEARING**, insurance rates, and so many other areas of business operations.

Then in the form of retaliation in the year 2016 Defendant's agent Lecrecia Wells arrived unannounced at the facility and excitedly proclaimed "we gone shut you down" before introducing herself.  This threat was made immediately after the wrongful citing made by Walter Rideaux was escalated as a complaint to Connie Presley.  Kimberly Johnson began to rotate her direct reports to visit the facility unannounced and without any type of report or complaint to harass and frivolously cite for deficiencies.

The Plaintiff applied to participate in Texas Rising Star and was found to be eligible as a two-star facility with only the submission of required documents to be recognized as a three-star facility.  The Defendant's agent Susan Marbut, a direct report of Kimberly Johnson, arrived at the facility to be frivolously cited for multiple deficiencies to terminate that eligibility.  All citing for deficiencies were for processes or procedures that were acceptable by the facilities assigned agent while another may cite the same procedure or process based solely on their interpretation and without regard to the previous agent's approval.   The Minimum Standards for Licensed Childcare Facilities require agents to cite based on their interpretation in too many instances.  For example:

1. Having an additional contact with a different address for an emergency on file.  Additional information was provided separately and entered into ProCare, the facilities management system and manually placed in the files; however the original admission form was not always altered. The emergency contact lists were printed and available in every classroom, in the common areas, and on the vehicles.  Though Susan Marbut was provided the lists showing additional contacts, the facility was cited for deficiency.

2. Having documentation of fire inspections.  Documenting the date of the inspection was sufficient according to the minimum standards.  The forms used to document the fire inspections are

published in the Defendant's provider portal.  However, Susan saw a report for one visit and cited for not having a report for the last visit though it was documented and was timely.  In the facility's small town and rural area, a report was provided only if there was an item that needed to be corrected, updated or changed to pass inspection.  Plaintiff had to call the fire chief and request they develop a report of no findings to appease Susan Marbut; it took the fire marshal about a week to develop the requested report, Susan Marbut threatened to recite the citing that ultimately remained on Plaintiff's public record for five years (EXHIBIT).

Together Kimberly Johnson and LaCrecia Wells gained information from a Guardian's spouse by calling her at work and asking her to provide her husband's pertinent information (name, date of birth, etc.) to conduct a background check for employment knowing the Guardian had a felony background base on what the spouse communicated.  The Defendant used that pertinent information to conduct a background check for employment under the facility's license as though the Guardian were an employee and claimed that Guardian was a bus driver even after months of surveillance never to find that Guardian transporting any child as an employee and knowing The Guardian's biological child and nephews and extend family were enrolled as students.  **EXHIBIT 114 and EXHIBIT USB Walter admin penalty Calvin Employee.**

The facility suffered greatly as the Defendant's agent Jennifer Johnson arrived months later citing a deficiency saying some of the children said the Guardian was transporting students when in fact after the Plaintiff shared the harassment endured the Guardian disenrolled his child not to return.  Defendant coerced the Plaintiff into accepting a twelve-month probationary period where there would be motoring to assure the Guardian actually was not an employee providing transportation for the facility, only to find out that probation included an end to the contract for subsidies for low income families, signage to be publicly displayed stating Plaintiff was on probation and constant unannounced visits over the span of the probation period.

There was no finding or citing for deficiency during that twelve month span because there was no application for employment on file nor affidavit on file warranting the completion of an employee fingerprint based background check for a Guardian to an enrolled child.  The Defendant did not provide the Guardian nor the Plaintiff any notification that this action was being performed and there was no notice of results or findings regarding this effort to anyone.

 LeCrecia Wells and Kimberly Johnson both arrived at the facility, taking children into a classroom unsupervised to be questioned as Plaintiff was refused the request to be present during the inquiry.  Parents were irate at this unannounced procedure and did not return to the facility.  Defendant also visited student's schools after that date to question children regarding the matter.  The Defendant's visit happened to be during a state exam.  One parent attributes her child's failure of the timed state exam

to this unorthodox method as the child was disturbed once disengaged and could not concentrate after the Defendant questioned him for such a long time.

Parents were called on their jobs and told to remove their children immediately and had to threaten the Defendant they would gain attorneys to stop the harassment as they had found a facility they were absolutely happy with and knew their children were safe and nurtured.

The Defendant had received all enrollment forms pertaining to the Guardian to include his family and his daughter's enrollment forms and dates of employment, applications, time sheets and roster of employees who served as bus drivers.

Kimberly Johnson forwarded the last page of a Risk Evaluation that was already completed to the Plaintiff pertaining to the Guardian for whom she caused the CBCU to perform an unauthorized background check and threatened that a signature must be obtained by the Plaintiff.   A penalty was accessed, and Plaintiff was given a date payment had to be made to prevent further action being taken against the facility.

The Defendant would not grant a request for an Administrative Review nor SOAH hearing regarding the citing for not performing an employee fingerprint based background check for a Guardian to an enrolled child.  Plaintiff had no knowledge of how to take a defensive stand against the relentless efforts of the Defendant who had no boundaries and was their own "god".  Plaintiff merely accepted the actions taken against her and endured the merciless harassment, taunting phone calls, public humiliation, character assassination, embarrassment, psychological effects, physical stress, unbearable duress and financial hardship caused by the Defendant's action in an effort to cause the religious, faith based, early childhood education, essential business to result in closure.

An applicant, Vickie Jones, applied as a caregiver.  Vickie Jones had experience as a caregiver within one year of her application and would have normally been a very quick approval for employment eligibility.  After two weeks Plaintiff contacted the CBCU and spoke with Lorena Tapia who stated she had been out on maternity leave and would get to Vickie Jones results when she could.  Lorena Tapia reminded the Plaintiff that Vickie Jones could not be hired until she sent the letter saying she was eligible and able to be present at the facility.  I decided to call the facility where the fingerprints were performed to find the results were forwarded to the Defendant the very next day.  Lorena Tapia did not submit the letter indicating Vickie Jones was eligible to be present at the facility as a caregiver until thirty-one days after the results were received.  This process is normally a maximum of three days; thus the intent was malicious.

Vickie Jones, an eligible employee, was being hired to assure the number of staff required to be present at the facility during a period of growth.  The Defendant held the applicant's fingerprint based background check to see if the Plaintiff would allow the applicant to begin working prior to receiving the

eligibility letter from CBCU.  Though this was an act of sabotage, according to the Minimum Standards for Childcare Centers, if the facility is short staffed and the initial background check is cleared then the applicant can be hired as an employee and can be counted in ratio and the fingerprint based background check would have to be scheduled within thirty days (previous regulation).

LeCrecia Wells arrived again at the facility and cited deficiencies for two staff not having complete background check results.  This arrival was without report or complaint; however, the Defendant is aware of new staff hires or applicants because the Provider Portal is the required method for conducting background checks for these new hires and applicants (EXHIBIT 79) and Lorena Tapia in the Central Background Check Unit who is the gateway for fingerprint-based results said she notified LeCrecia Wells that two employees were pending their fingerprint based background checks.   LeCrecia Wells arrived to the facility with the two staff who had cleared the Defendant's initial background check and was able to work in the capacity of caregiver if the facility was short staffed.  LeCrecia was given the classroom logs to indicate the number of children enrolled and present, the employee roster was posted to show the number of caregivers/staff employed.  The two employees onsite were needed to accommodate the number of children present; however, LeCrecia Wells concluded that "if" the Plaintiff was onsite there would not be a need for both staff to be present and the staff listed as PRN should have been present. LeCrecia Wells refused to take into consideration the staff listed as PRN was not available and the school age children had been release from school and was enroute to the facility.  Had the school age children arrived with the number of staff present at the time LeCrecia Wells visit, the facility would have been "out of ratio" because of staff shortage.  LeCrecia Wells had hurriedly left the facility and record of the citing was left, according to staff.

The Defendant did grant an Administrative Review for the citing of two staff whose fingerprint based background checks had not been received.   The Administrative Review was upheld by the Defendant thus a SOAH hearing was requested.  This was the first SOAH hearing Plaintiff participated in. The Defendant controlled every aspect of the scheduling of the hearing.  The if the Defendant did not want a SOAH to be held then an Administrative Review would simply be denied, or a request for a SOAH hearing will remain in "limbo" without response.  And, if there is a penalty associated with the citing the Defendant will require payment of the penalty by a certain date (this is a free form text area Defendant can manipulate depending on the pursuit) while withholding a letter confirming receipt of the request for an Administrative Hearing.  And, payment of the penalty is an acknowledgement and acceptance of the deficiency cited as it will remain on the record for five years.

The Defendant provided notification that a SOAH hearing was granted and would be added to the court docket, assigned a date and time for the hearing; the letter was received.  On the day of the hearing, a United States Parcel (UPS) ground delivery arrived with a letter for the Plaintiff giving notice of how to

submit evidence for the hearing that was required by the court three days prior to the hearing.  Plaintiff remembered the string of emails for the Defendant was usually the first name dot (.) the last name and used that format to forward evidence to the Defendant's attorney, and LeCrecia Wells.

When the Honorable Judge began to discuss the Defendant's evidence, the Plaintiff then shared the tactics of the Defendant and was permitted to email the clerk evidence for the hearing.  The Honorable Judge received audio recording and documentation provided to LeCrecia Wells at the time of the citing hoping she would reconsider.  The Honorable Judge found the Plaintiff to be in compliance – judgement was for the Plaintiff.  The Defendant' attorney was furious and submitted communique and documents to the court without submitting the same to the Defendant.   Plaintiff requested documents from the Court's Clerk.

During the hearing, before judgment was made, Plaintiff asked if the Defendant would remove or correct the citing if judgement was made in favor of the Plaintiff.  There was no response and the citing remained on the Plaintiff's records for five years despite the judgement and the repercussion of the citing impacted the Plaintiff for five years to include increased insurance rates, public humiliation seen on Defendant's website, questionable ethics amongst peers and judged character by the community and clients and so many other financial burdens and hardships.

There seemed to be no other recourse, so the Plaintiff escalated the matter to the State of Texas Health and Human Service Commission only to be investigated.  The Federal Bureau of Investigation (FBI) conducted an official investigation of the Plaintiff.  An agent arrived at the facility unannounced and while in front of children and caregivers, gained the Plaintiff's fingerprints and signature.  She looked at the red door and asked if that was where the Plaintiff lived.  She said, "You must be a happy person".  I said, "You have to be when your working with children".  A gentleman arrived announcing he worked for the FBI and asked if he could look around back, saying, "I want to make sure it is safe".

### Conclusion and Request for Relief

This Courts finds Defendant violated Plaintiff's Civil Rights, federally protected CONSTITUTIONAL RIGHTS and the Texas Protection of Religious Organization Act, TEX. GOV'T CODE ANN. § 2401.002 (West 2021) and presents this Court with Federal Question.

This Court finds all levels of American government must operate within the law ("legality") and provide fair procedures according to the Fourteenth Amendment. CIVIL RIGHTS ACT, 42 U.S.C. § 1983

This Court finds the FACTS presented by the Plaintiff unveil Defendants ACTS and are sufficient to show just cause for this matter to proceed and Defendant must ENFORCE

COMPLIANCE upon any governmental entity or an officer or employee of a governmental entity.

This Court finds Defendant must "bring an action for injunctive and declaratory relief to enforce compliance" under the authority of the United States Congress and the Governor of the great State of Texas and this Court. Sec. Texas Protection of Religious Organization Act, TEX. GOV'T CODE ANN. § 2401.004

This Court must declare exemplary relief for the extent of emotional, physical, and psychological damage caused by the infringement of Plaintiff's civil and federally protected right more specifically cyber security and its extraordinary effects on the Plaintiff.

**Reason for Granting**

_____

[6]CIVIL RIGHTS ACT, 42 U.S.C.1983

[7]Constitution of the United States

[8]Cyber Security by ACTS found relevant to 10 CFR § 73.54

[9]Texas Protection of Religious Organization Act, TEX. GOV'T CODE ANN. § 2401.002 (West 2021)

**Court Costs and Fees**

Costs and fees arising from this matter including appeals and all other effort shall be the responsibility of the Defendant whether or not suit is favorable for the Plaintiff.  Plaintiff is cannot to afford costs.

**Prayer**

Plaintiff PRAYS this Court will find the acts of the Defendant to be extraordinary thus granting injunctive and declaratory relief that exemplifies an equal justice.  Plaintiff PRAYS measures to enforce the states compliance are equally met.


Respectfully Submitted,


*/s/ Xavier L. Crittendon*
Xavier L. Crittendon
Plaintiff, pro se
P. O. Box 2033
DeSoto, TX 75123
xavierlcrittendon@gmail.com
(214) 276-3277

**CERTIFICAT OF SERVICE**

I hereby certify a true and correct copy of the above and foregoing have been served, via e-service, to the following:

Glen Imes
Assistant Attorney General
P. O. Box 12458, Capitol Station
Austin, Texas 78711-2548
(512) 936-1838
glen.imez@oag.texas.gov

*/s/ Xavier L. Crittendon*
Xavier L. Crittendon
Plaintiff, pro se
P. O. Box 2033
DeSoto, TX 75123
xavierlcrittendon@gmail.com
(214) 276-3277

## LIST OF PARTIES

State of Texas, serviced by Travis County Constable, Precinct 5 by hand on April 6, 2023, and Human Services Commission (HHSC) serviced by Travis County Constable, Precinct 5 by hand on March 24, 2023, Defendant.

## OTHER PARTIES OF INTEREST

Cecil Young, Executive Director for HHCS, Agent

Angela Jonson2, Agent

Jonathan Miles, Agent

Tara Ward, Agent

Walter Rideaux, Agent

Leslie Rodney, Agent

Lorena Tapia, Agent

Janet Kisler, Agent

Cyndel Shephard, Agent

Tommy Ball, Agent

Giomar Ibarra, Agent

Dallas Wilson, Agent

Bonnie Jensen, Agent

Susan Marbut, Agent

Mia Rawlins, Agent

Tiffany Hall, Agent

Jennifer, Johnson, Agent

Ibarra Giomar, Agent

Lecrecia Wells, Agent

Connie Presley, Agent

Kimberly Jones, Agent

## THERE ARE NO RELATED CASES

**INDEX OF APPENDICES**

Docket Entry

04/13/2023 9 REPORT AND RECOMMENDATIONS re 1 Complaint, 6 Motion for Permanent Injunction, filed by Xavier L. Crittendon. The Court GRANTS Plaintiff's 2 Motion to Proceed in forma pauperis, GRANTS Plaintiff's 5 Pro Se MOTION for Permission to file Electronically. CASE NO LONGER REFERRED to Magistrate Judge Susan Hightower. Signed by Judge Susan Hightower. (pg) (Entered: 04/14/2023)

04/27/2023 15 OBJECTION *** to 9 Report and Recommendations by Xavier L. Crittendon. (pg) *** Audio Exhibits located in Clerks Office archive, not available on CM/ECF. Modified docket text entry on 4/28/2023 (pg). (Entered: 04/28/2023) 04/27/2023 15 OBJECTION *** to 9 Report and Recommendations by Xavier L. Crittendon. (pg) *** Audio Exhibits located in Clerks Office archive, not available on CM/ECF. Modified docket text entry on 4/28/2023 (pg). (Entered: 04/28/2023)

04/21/2023 11 MOTION and Standing Order to Rule and Overrule Judgment for Claims and Suits in Administration and Lower Courts Impeded by Defendant. by Xavier L. Crittendon. (pg) (Entered:

04/21/2023) 04/24/2023 12 Motion to Dismiss for Failure to State a Claim by State of Texas Health and Human Services Commission. (Imes, Glen) (Entered: 04/24/2023)

04/27/2023 15 OBJECTION *** to 9 Report and Recommendations by Xavier L. Crittendon. (pg) *** Audio Exhibits located in Clerks Office archive, not available on CM/ECF. Modified docket text entry on 4/28/2023 (pg). (Entered: 04/28/2023)

04/27/2023 16 MOTION and Standing Order to Rule and Overrule Judgment for claims and suits in administration and lower courts by Xavier L. Crittendon. (pg) (Entered: 04/28/2023) 05/01/2023 17 MOTION, Plea for State Immunity be waived and Order Summary Judgement Officers Return and Official Receipt Executed Upon State of Texas Attorney General by Xavier L. Crittendon. (pg) (Entered: 05/01/2023)

TABLE OF AUTHORITIES

<u>Attorney for Opposing Party</u>

A. LINDSEY LAW FIRM, Attorney Lindsey Cumming, Xavier L. Crittendon vs. Dr. Praveen G. Kottackal Varkey of DeSoto Family Dental, 298th Judicial District Court, Dallas County – MEDICAL MAL-PRACTICE

B. CARPENTER & ASSOCIATES, Attorney Jason K. Naumann, Xavier L. Crittendon vs. Calvin Richardson, Jr., Case No. DF-23-00638, 301st Judicial District Court, Dallas County - DIVORCE

<u>Attorney for Plaintiff</u>

C. BRETT H. PRITCHARD, Attorney at Law, Attorney Brett H. Pritchard, Xavier L. Crittendon vs. Health and Human Service Commission, Service Code 529201470 Penalty for $100, Invoice 529220145324631 - Request for SOAH **EXHIBIT 15**

    1. Terminated agreement to provide Plaintiff with counsel

D. SILBERMAN LAW FIRM PLLC, Attorney Kipp Marshall Xavier L. Crittendon vs. Terry and Patricia Smith, Case No. 104609, 443rd District Court Ellis County – REAL PROPERTY

    2. Counsel is requesting original documents and other information be provided to

    <span style="color:red">EXHIBIT</span>

    3. Defendant with no advancement to benefit Plaintiff's best interest in the matter.

E. HAHN LAW FIRM PC., Attorney Derrick Hahn, Xavier L. Crittendon vs. Terry Smith, Case No. 104509, 443rd Judicial District Court Ellis County – REAL PROPERTY

    4. Counsel refused to provide all transcripts and files.

    5. Counsel ask Plaintiff to continue to make payments on a property already paid in full.

    6. Counsel asked the Plaintiff to change the date of payment to accommodate opposing party.

    7. Counsel took no action when opposing party removed property embedded in the suit litigated and advised Plaintiff to walk away.

    8. A change of counsel was performed.

F. LAW OFFICE OF PATRICK A. MCLAIN, Associate Attorney, Eric Durojaiye, Business 214-416-9100 criminal charges not assigned, no case – CRIMINAL DEFENSE

    1. Counsel is not returning calls

Other

G. TEXAS WORKFORCE COMMISSION, Claims Special Hearing, Tatonia Thomas Claimant vs. Xavier L. Crittendon, Employer, Claim No. 22-051235-5 – PAYDAY CLAIM

    1. Hearing Officers are badgering, harassing and coercing Plaintiff

    2. Notice of hearings are held by US Postal Service to prevent Plaintiff's appearance

EXHIBIT


CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED

Civil Rights Act, 42 U.S.C.1983

United States Constitution

Cyber Security by ACTS found relevant to 10 CFR § 73.54

Texas Protection of Religious Organization Act, TEX. GOV'T CODE ANN. § 2401.002 (West 2021)

18 U.S.C. § 3231 (granting the federal district courts "original jurisdiction, exclusive of the courts of the States," over federal criminal proceedings); 28 U.S.C. § 1257 (granting the Supreme Court appellate jurisdiction over "[f]inal judgments or decrees rendered by the highest court of a State" in cases arising under the Constitution or federal laws or treaties); id. § 1334 (granting district courts jurisdiction over bankruptcy cases); id. § 1337 (granting district courts jurisdiction over antitrust cases).

Romero, 358 U.S. at 379. Congress first enacted a statute granting the federal courts general federal question jurisdiction in 1875. Act of March 3, 1875, § 1, 18 Stat. 470 (codified at 28 U.S.C. § 1331(a)). The 1875 statute, like the current federal question statute, used language similar to that of the Constitution. Early cases interpreting the statutory language relied heavily on Chief Justice Marshall's construction of the constitutional grant of jurisdiction. See, e.g., Pacific R.R. Removal Cases, 115 U.S. 1 (1885).

LII Electronic Code of Federal Regulations (e-CFR) Title 10 - Energy CHAPTER I - NUCLEAR REGULATORY COMMISSION PART 73 - PHYSICAL PROTECTION OF PLANTS AND MATERIALS Subpart F - Physical Protection Requirements at Fixed Sites § 73.54 Protection of digital computer and communication systems and networks.

Fed Rule of Civil Procedure 12(b)(1).

Fed Rule of Civil Procedure 12(b)(6).

Plaintiff, now finds herself under personal attack.  All business matter in the state of Texas is being prevented, halted, audited, flagged, or delayed as a result of retaliation by Defendant:

1. Plaintiff has been prevented from developing and organizing the Summer Food and Adult Program (CACFP) to provide meals to at-risk children and children who are not in childcare during the summer and have access to nutritious meals.

2. Home Health Service was closed TULIP would not allow entry to renew license

3. Texas Council for Insurance performing audit

4. Texas Department of Insurance performing audit

5. Insurance Agency Progressive all business is intercepted

6. T-Mobile Cellular flagged and all business is intercepted

7. SAM.gov business registration prevented, pending verification (deadline April 13, 2023)

8. ADT Security intercepted, another user who is the MASTER has control of the system

9. Texas Workforce Commission reopened a closed case filed in April 2021 with no result to date

10. An exorbitant amount of phone calls from 202, 817, and 512 callers pretending to need childcare or other services asking hundreds of questions with no result.

11. Over 150 documented tours of the academy that were performed are suspected of being agents of the state.  This effort is tiring to the soul, an undue stress and duress on any human.

12. Defendant wrongfully BARRED Plaintiff from the business organization without conducting RISK EVALUATION which would find Plaintiff is not a threat to children.

When asked for a Risk Evaluation, Defendant refused and has not responded to the date.  This BARR is the result of the April 2021 arrest that has not been charged or assigned as a case to the date.

13. Defendant began to wrongfully cite and prevent hearings with the State Office of Administrative Hearing (SOAH).  Defendant controls the ability to have a hearing and with no oversight or accountability prevents childcare facilities from having a hearing. Defendant, also controls communication for announcing and preparing for hearings so they announce the hearing and on the date of the hearing pay for ground delivery to send information for preparing for the hearing to include how to submit evidence for the hearing (due three days prior to the hearing), childcare facilities don't stand a chance at the wrath of the Defendant.

Defendant and its agents would rather retaliate against what is good, full of love and grace and mercy to all mankind alike than join forces to assure the needs of children and their families are met during the most disastrous events of our lifetime, the COVID-19 Pandemic, the 2021 Freeze Disaster, and Respiratory Syncytial Virus (RSV).

Defendant threatened closure of Plaintiff's business operation but because of excellence found it was impossible to rightfully close.  Defendant's Agents began to wrongfully cite multiple citing each time Plaintiff received recognition from Texas Rising Star and would document untruths about events and matters that impact Plaintiff's public record, and financial solvency resulting in grave mental anguish, physical pain, and duress.

<u>Other Parties of Interests</u>

Health and Human Services Commission
Cecil Young, Executive Director
Agency #: 529
4601 W. Guadalupe
P.O. Box 13247
Austin, Texas 78711-3247

Health and Human Services Commission
Angela Jonson2, Child Care Regulation Inspector
121 Westgate Dr.
Waxahachie, Texas. 76165
Angela.Johnson2@hhs.texas.gov

Health and Human Services Commission
Tara Ward HHCS, Child Care Regulation Inspector Supervisor
1501 Circle Dr. Ste. 310
Fort Worth, Texas 76119
tara.ward@hhs.texas.gov

Texas Health and Human Services Commission
Walter Rideaux, Child Care Regulation Inspector Supervisor
8700 Stemmons Fwy, Ste 104
Dallas, Texas 75247
Walte.Rideaux@hhs.texas.gov

Texas Health and Human Services Commission
Leslie Rodney, Child Care Regulation Inspector
8700 Stemmons Fwy, Ste 104
Dallas, Texas 75247
Leslie.Rodney@hhs.texas.gov

Health and Human Services Commission
Lorena Tapia Centralized Background Check Unit
P.O. Box 149030
Mail Code 121-7
Austin, Texas 78714
Lorena.Tapia@hhs.texas.gov

Health and Human Services Commission
Janet Kisler, Centralized Background Check Unit Program Administrator
P.O. Box 149030
Mail Code 121-7

Austin, Texas 78714
janet.kisler@hhs.texas.gov

Health and Human Services Commission
Cyndel Shephard Centralized Background Check Unit
P.O. Box 149030
Mail Code 121-7
Austin, Texas 78714
Cyndel.Shephard@dfps.texas.gov

Health and Human Services Commission
Tommy Ball, Program Regulatory Enforcement Specialist VI
Texas Department of State Health Services
P.O. Box 149347
Austin, Texas 78714-9347
Tommy.Ball@hhs.texas.gov

Health and Human Services Commission
Dallas Wilson, Administrative Assistant IV
Open Records Department Legal Services Division
4601 West Guadalupe Street Mail Code: 1070
Austin, Texas 78751
Records@hhs.texas.gov

Health and Human Services Commission
Bonnie Jensen, Administrative Assistant
Records Management Office
4601 West Guadalupe Street Mail Code: 1070
Austin, Texas 78751
Records@hhs.texas.gov

Health and Human Services Commission
Susan Marbut, CCL Inspector V
1501 Circle Drive, Suite 310
Fort Worth, Texas 76119
Susan.marbut@hhsc.state.tx.us

Health and Human Services Commission
Mia Rawlins, CCL Program Improvement Specialist
1200 E Copeland Rd., Ste.400
Arlington, Texas 76011
Mia.Rawlins@hhsc.state.tx.us

Health and Human Services Commission
Tiffany Hall, Child Care Licensing Supervisor - Unit 19

550 E 15th Street - Suite 120
Plano, Texas 75074
Tiffany.Hall@hhsc.state.tx.us

Health and Human Services Commission
Jennifer Johnson, CCL Inspector IV
121 Westgate Drive
Waxhachie, Texas 76165
Jennifer.Johnson3@hhsc.state.tx.us

Health and Human Services Commission
Gio Ibarra, Child Care Regulation Supervisor II
535 S Loop 288
Denton, Texas 76205
Giomar.Ibarra@hhs.texas.gov

ORDER FOR IMMEDIATE INJUNCTIVE RELIEF FOR PLAINTIFF

IT IS ORDERED, Defendant and its agents will cease all acts of terrorism against Plaintiff who is a citizen of the United States of America whether those acts be known or unknown by Plaintiff and this Court, upon judgment, and hereafter.

IT IS ORDERED, Defendant to assure full reinstatement of Plaintiff early childhood education program and same with all agencies, institutions, and organizations both known and unknown to Plaintiff and this Court, who acted as Agents for the Defendant upon judgment, and hereafter.

IT IS ORDERED, Defendant to assure reinstatement of Texas Rising Star (TRS) for recognition that allows for grants, funding, and other charities as it pertains to Plaintiff.  This organization failed to protect those whom it has oversight and hereafter shall have no oversight of Plaintiff.  This will apply to any other business operation owned by Plaintiff or in which Plaintiff serves whose oversight would normally fall under TRS and Defendant's authority.

IT IS ORDERED, Plaintiff shall be reinstated with Education First Steps (EFS) for recognition that allows for grants, funding, and other charities as it pertains to Plaintiff.  This organization failed to protect those whom it has oversight and hereafter shall have no oversight of Plaintiff.  This will apply to any other business operation owned by Plaintiff or in which Plaintiff serves whose oversight would normally fall under EFS and Defendant's authority.

IT IS ORDERED, Plaintiff's public record be cleared and citing for no background check be stricken from internal and external record and all systems known and unknown to Plaintiff and this Court.

IT IS ORDERED, The barr against Plaintiff be lifted and stricken from the public record and personal record and all systems known and unknown to Plaintiff and this Court. Plaintiff t be reinstated as Director with a non-expiring license.

IT IS ORDERED, Defendant shall have no oversight of Plaintiff.  Plaintiff will remain faithful to assuring Minimum Standards for Licensed Childcare Facilities are met and exceeded for childcare centers.  Plaintiff shall maintain visibility as a licensed childcare facility, maintaining a non-expiring license with DFPS as this recognition will continue to allow for

grants, funding, and other charities as well as full participation in all other efforts to include events, training, meetings, system notifications, department updates, full access to provider portal, etc., and have all likeness and enjoy all benefits as a licensed childcare facility.

IT IS ORDERED, this remedy shall apply to any other business operation owned by Plaintiff or in which Plaintiff serves whose oversight would otherwise fall under Defendant's authority.

IT IS ORDERED, Texas Workforce Commission Claim Number 22-051235-5that was closed then reopened to cause stress, duress, and harm to Plaintiff be permanently closed and find that judgment for Plaintiff is fair and just.

IT IS ORDERED, all means of support be given to Plaintiff to provide meals to children in the community during school closures through the CACFP food program.  Plaintiff is granted non-expiring licenses and permits to perform this service for those who need it most, upon judgment.

IT IS ORDERED, Waxahachie Sherriff Department drop all charges and pending charges against Plaintiff from both public and internal records.  The charges have been used as a tool and leverage for Defendant to bring harm to Plaintiff who has committed no crime; All charges be expunged from the record, upon judgment.

IT IS ORDERED, the Texas Department of Public Safety reinstate license 07109329 and issue it as a non-expiring license, upon judgment.

It is ORDERED and all that all Orders for all injunctive Relief are GRANTED to Plaintiff. Final Judgment for which let execution and all writs and processes necessary to immediately enforce this judgment.  All special interest in bringing harm and injury to any extent in any manner for any reason at any time immediately ceases and gives no rise hereafter.  This judgment disposes of all claims and all parties and subjects in this matter and is not appealable.

_____

Date of Judgement

_____

Judge Presiding

ORDER FOR IMMEDIATE DECLARATIVE RELIEF FOR PLAINTIFF

IT IS ORDERED and DECLARED, Texas Workforce Commission, HHSC will update the DFPS Portal to reflect All Things Good Kids Academy as "accepts subsidies" thus Plaintiff shall receive grant distribution for the month of April 2023 from the Child Care Relief Fund which Plaintiff is entitled as the early childhood education program did operate the last quarter of 2022 and had children enrolled who received subsidies for tuition.

IT IS ORDERED and DECLARED, Plaintiff is compensated for the months of closure imposed in the amount of six hundred thousand dollars to be disbursed immediately upon judgment allotting three days for mail delivery.

IT IS ORDERED and DECLARED, Plaintiff is granted 2% of the Department of Health and Human Services Commission Biennial Budget since 2011.  To be arranged by wire in one sum directly deposited into Plaintiff's account within thirty days of judgment.

IT IS ORDERED and DECLARED, SBA EIDL 9898648209 for the Plaintiff to be forgiven upon judgment.

IT IS ORDERED and DECLARED, Plaintiff's direct and subsidies loans are forgiven MOHELIA 0003662254, and all loans for education hereafter for Plaintiff who is a lifelong learner be forgiven, upon judgment.

IT IS ORDERED and DECLARED, the harm brought forth by Defendant has caused financial hardship for Plaintiff, and for that reason all debt owed to creditors be paid in full. Plaintiff is to provide an account of debt to this Court upon judgment.

IT IS ORDERED and DECLARED, the harm brought forth by Defendant has caused further financial hardship for Plaintiff, as it pertains to the Internal Revenue Service, and for that reason, all debt owed is to be forgiven; Plaintiff to remain tax-exempt and sales tax exempt and free from loss of such exemption for any reason upon judgment.

It is ORDERED and DECLARED that all Orders for all Declarative Relief are GRANTED to Plaintiff.  Final Judgment for which let execution and all writs and processes necessary enforce this judgment.  All special interest in brining harm and injury to any extent in any manner for any reason at any time immediately ceases and gives no rise hereafter.  This judgment disposes of all claims and all parties and subjects in this matter and is not appealable.

_____

Date of Judgement

_____

Judge Presiding

EXHIBITS SUBMITTED WITH ORGINAL COMPLAINT

A "helps service" United Parcel Service, 791 N. Hwy. 77, Ste. 501-C, Waxahachie, Texas 75165 – assigned to Plaintiff was a gentleman named Loki (lo kee). Loki completed all the scanning and copying of documents for this suit.  Unfortunately, documents were found to be scanned or copied, out of order, upside down or missed all together.  This has resulted in miss coding exhibits.

Plaintiff will make every effort to identify each exhibit "in the order" filed regardless of the coding.

A.    Childcare Regulation Provider Letter Implementing House Bill (HB) 525, 87th posted to Defendant's website  https://www.hhs.texas.gov/sites/default/files/documents/cclhouse-bill-525-provider-_guidance.pdf

B.    Internal Revenue Service Letter Tax Exemption Section 501(c)3 indicating charity, religious or other organization found essential as deemed by HB 525.

C.    Gmail ALL THINGS GOOD KIDS ACADEMY Texas State Exemption indicating charity, religious or other organization found essential as deemed by HB 525.

D.    West Pastoral License, Educator indicating charity, religious or other organization found essential as deemed by HB 525.

E.    Hart Pastoral License, Educator and Director indicating charity, religious or other organization found essential as deemed by HB 525.

Crittendon Ministerial License, Director indicating charity, religious or other organization found essential as deemed by HB 525.

F.    All Things Good Kids Academy Website (screenshot) indicating charity, religious or other organization found essential as deemed by HB 525.

G.      EMAIL HHSC Re: VOLUNTARY SUSPENSION (forced closure) This email communication not only shows the Defendant's coercion regarding closure but an effort to prevent reopening by threatening that the qualifications of a more than qualified Director were not sufficient.  The director's license was issued eventually however the facility was reported as permanently closed so it no longer impacted their efforts. Page 5. "not operating" and "close permanently" is what was reported to childcare group Dallas County and Childcare Assistance Ellis County and other agencies cause the close the essential business.

H.      Workforce Solutions Letter Texas Rising Star Loss of Certification as a result of the Defendant's citing of staff in orientation.  This citing had an immediate impact, was upheld by administrative review; a SOAH hearing was requested however, has not been added to the docket as of July 2022.  This procedure is completely controlled by the Defendant and will not occur as it is beneficial for citing to remain until these efforts are satisfied.

I.      All Things Good Kids Academy Annual Curriculum indicating charity, religious or other organization found essential as deemed by HB 525.

J.      Texas Council for Corporations indicating other State of Texas organizations or institutions acting as agents on the Defendant's behalf to bring harm or injury to Plaintiff.

K.      Texas Department of Insurance indicating other State of Texas organizations or institutions acting as agents on the Defendant's behalf to bring harm or injury to Plaintiff.

L.      All Things Good Kids Academy Tour Request Form used to identify tours requested under false pretense by Defendant and its agents.  These tours became excessive and overwhelming in number.  This form of harassment was costly and brought financial harm, stress, and duress to the Plaintiff as tours were also given after 6 pm on weekdays and on the weekends.  The use of this form and questioning whether or not these persons worked for or

were affiliated with the State of Texas end almost all tours; the difference in the number of tours requested was unexplainable.

M.      Health and Human Services Commission issuance of All Things Good Kids Academy Operating License #1453246 December 17, 2012.

N.      Department of Family and Protective Services issuance of Xavier L. Crittendon (Howard) Non-Expiring Directors License.

O.      SECTION 1.  Subtitle H, Title 10, Government Code, is amended by adding Chapter 2401 to read as follows: Sec. 2401.002.  ESSENTIAL BUSINESS; PROHIBITED, RESTRICTIONS. Sec. 2401.003.  RELIEF AVAILABLE. Sec. 2401.004.  IMMUNITY WAIVED.

P.      EMAIL HHSC Central Background Check Unit (CBCU) RE: BARR without RISK VALUATION. Page 3. Janet Kisler Indicates there was going to be a review by her chain of command.  There has been no response to date.   The response of Janet Kisler and Lorena Tapia was challenged as their making their decision was fragmented; 745.661 pg. 8, 745.667 pg. 5 and 745.645 pg. 3. Request for Risk Evaluation responded to on June 6, 2023 812am by Cyndel Shephard and forwarded to Loren Tapia on June 24, 2022 919am pg.10.

Q.      Advance Childcare our Child and Adult Food Program 3rd party indicates "z." before the facility name unofficially indicating the account is inactive though it is still accessible and usable by the Plaintiff.

R.      EMAIL HHSC 3rd Request to update portal:  Website indicates facility visibility restored (was inactivated by Defendant) but subsidies remain blank to prevent CCRF childcare relief funding that states a facility must be participating in and or have had children in care who receive subsidies for low-income families.  Per CCRF Texas Workforce Solutions controls this field who oversees CCA and CCG

EXHIBIT R1/4 HHSC Portal as of March 13, 2023 "Subsidies is blank vs Y"

EXHIBIT R2/4 Ellis County Agreement Updated

EXHIBIT R4/4 HHSC "system will automatically be updated".

S.      EMAIL HHSC Open Records Request (ORR) RE: INELIGIBLE BACKGROUIND CHECK; BARRED WITHOUT OPPORTUNITY FOR A RISK EVALUATION.  ORR response with no results other than actual the citing itself and list of convictions indicating charges that result in a complete BARR from a childcare facility.  There was no verification of whether or not there was a threat to children and there was NO CONVICTION of any crime.

T.      Criminal History Requirement 26  TAC Code 745.661 (no risk eval performed never has there been a conviction of any sort on the record)

U.      Texas Health and Human Services (HHSC) Letter stating the essential business is suspended but actually the Defendant PERMANENTLY CLOSED and is requesting to RETURN THE PERMIT TO LOCAL CCL OFFICE.  See EXHIBIT G.  This closure was not agreed upon, it was forced as Plaintiff was coerced into requesting the type of closure as "Voluntary Suspension", then Defendant notified other agencies, departments of PERMANENT CLOSURE and forced other organizations and entities to end their rapport.  Even after returning to the facility, Defendant did not notify the other agencies and departments we were operational.

V.      HHSC Letter Invoice for Penalty w/comply by date of 5/24/2023 whereas today's date if March of 2023, and Plaintiff's Letter Requesting SOAH w/no response pg. 4; if compliance by the date passes before the SOAH hearing is granted then further penalty may apply..

W.      HHSC Minimum Standards for Childcare Centers Division 4. 746.1301 Professional Development Orientation is required and 746.1303 What must orientation for employees at my childcare center include? The employee must be present at the facility to complete orientation. Angela Johnson cited a deficiency for an employee who completed an initial background check

through HHSC eligible to work.  Shortage of staff resulted in completing orientation as the applicant was supervised by the director.  There was no violation as the employee completed the initial background check, there was a shortage of staff, and the employee was supervised by the director of the facility.

**X.      HHSC Minimum Standard for Childcare Centers 745.639 What Information will a notice letter that the CBCU sends to the subject of a background check include?  When a parent who was subject of an investigation was never notified, Plaintiff was barred without notification or opportunity for Risk Evaluation.  There was no opportunity to request a hearing A(ii) or B (ii) and the link lead to a webpage that did not provide directions on how to request the accuracy of information provided pg. 2.  Letter to Plaintiff pgs. 3-5 with background results states the childcare requested a background check and there was nothing indicating a SOAH hearing was able to be requested Link from the letter opened webpage CHILDCARE REGULATIONS BACKGROUND CHECKS, but no instructions found to question the accuracy of findings pgs. 4-7. See Texas Administrative Code EXHIBIT 15.**

Y       GMAIL Texas Rising Star Impact Form; The latest date on the emails are August 30, 2023 and August 25, 2023.  These emails are requesting a signature for IMPACT documents that resulted from the Defendant's citing for not having a background check results for an employee going through orientation..  After careful consideration, Plaintiff declined to sign these documents as they are an acceptance of the determination and agreement to end participation.

Z.      EMAIL Advance Childcare Network Child and Adult Care Food Program (CACFP); November 1, 2022, requesting the Plaintiff submit a termination letter.  After careful consideration, Plaintiff did not submit a letter requesting termination as this would be a request and agreement to end participation and would seem as though we were not operating. There were three children enrolled and documented as such in their systems.

1.      IPhone 13Pro Max Diagnostics Mobile Resource Inspector; Pgs. 1-2 All devices for the Plaintiff reset, downloaded, extracted or some form or another transitioned or transmitted data without permissions, warnings or knowledge; Pgs. 3-4 Primary account holder was changed; Pgs. 5-8 TMobile Bill showing increased unexplained billing ACCOUNT at the top from left to right equals Account 101.69 (includes fee for SERVICES).  DETAILED CHARGES should be a detail of the ACCOUNT instead is an increase of $20 for three lines, taxes and fees and again (fee for SERVICES) totaling 184.12.  Then again at the very top of the bill TOTALS is 184.12 and again (fees for SERVICES) with a balance of 203.25,  SERVICES was added three times to this bill and $20 for each line was added without Plaintiff knowledge or permission or consent.  This is an effort to increase costs by acting as an agent for the Defendant whose elaborate effort is to eliminate revenue.  Addendum pg. 1 explanation of area code 210 (San Antonia, Tx) as the change of password normally comes from the carrier in the form of seven digits, not a phone number (210) 361.3141 seen in this instance.

2.      Social Media Facebook page compromised as there appears to be a second login/user. The login difference is one letter "gb" instead of "fb".  Defendant and its agents have penetrated and invaded Plaintiff's social media platforms.

3.      ProCare Software Childcare Management System
ProCare is acting as Defendant's agent in an effort to show cancellation of services was not forced by the Defendant.  Access has been denied and a link to access information has not been provided to Plaintiff leaving clients with no access to client information, tax or payroll data, etc.; Pgs. 3-4 is an email last dated Monday, February 20, 2023, requesting cancellation repeatedly since January 2023 now incurring late fees.  Explaining the form was submitted via DocuSign and did not allow for the correct selection of reason for cancellation; Pgs. 5-7 DocuSign form printed to paper as the electronic copy would not allow correct selection for canceling service – attachment to email; Pgs. 8-12 is an email last dated Wednesday, March 15, 2023, again requesting cancellation; Pgs. 13-15 DocuSign form printed to paper again – attachment to email; Pgs. 16 ProCare Software Childcare Management System (Screen Shot) After logging into

the system the Default is SysAdmin, this is usually ADMIN; Pgs. 17-18 ProCare screenshot showing menu is greyed out and not able to be selected.


4. Educational First Steps (EFS)

These documents show Plaintiff was active with staff and children enrolled contrary to the recording of the TEAM meeting with Allease Lynce and her supervisor Calenthia Cheatham. Pgs. 1-2 Memorandum of Understanding emailed for signature before any communication with Plaintiff. Without thought was signed, dated December 1, 2022, and returned as requested. The change impacting rapport with the Plaintiff is a requirement to maintain a level 3 or 4 with TRS. Would like to request the recording of TEAM meeting see body language of EFS participants as they were under duress.; pgs. 3-9 email Tuesday, January 17, 2023 325pm. Survey completed and confirmed receipt; pgs. 10-11 email August 3, 2022, 721am. Eloomi Training; pgs. 12-17 Electronic Submission of Snapshot April 21, 2022, 938pm as this form indicates children were currently enrolled and Educational First Steps was Aware; pg. 18 Snapshot January 20, 2022, 233am;  pgs. 22-24 Ethnicity and Enrollment Forms dated November 12, 2020, and September 3, 2020; pgs. 25-45 Staff training and emails indicating participation contrary to supervisor Calenthia Cheatham's statement during the TEAM meeting; Addendum: Team meeting invite Wednesday, December 14, 2022.


5.      HHSC Leslie Rodney arrived at All Things Good Kids Academy on October 17, 2022, which was the second opening still unaware the Defendant's forced closure was still in effect. Leslie Rodney arrived stating **"They gave me a list of things to ask for."** and proceeded to ask for thirteen items. Of the thirteen items Rodney Leslie had initially documented six citing and removed three before printing. The following are emails and attachments of the last printouts and the final citing of deficiency. Pgs. 1-8 is an email Monday, October 17, 2022 419pm forwarding attachment Form2396 citing a deficiency for HRC42.044 not allowing inspector to enter to conduct investigation, 746.3401 Annual Sanitation and 746.801(6) Required Records Maintained and only one child in care; pgs. 9-13 is an email Monday October 17, 2022 544pm

responding to citing with attachments indicating insurance records were available and a notice of unavailability if ever insurance is not available as required by Minimum Standards for Childcare Centers Chapter 746 and response that the Defendants perform the Sanitation Inspection because of the rural location of the academy.  Odd that an email stating corrections were made Tuesday, **October 18, 2022 931am was received with Form 2936 attached showing HRC42.044 and a different code pertaining to infants THERE WERE NO INFANTS PRESENT.** There was only one child over two years of age and able to sleep on a mat 746.2427.  The director was not made aware this code was added as there was no prior discussion.  After phone communication, the other codes would be removed and a corrected Form 2936 would be submitted and administrative review was requested for what was believed to be the remaining code.  While the code is not a deficiency it is listed as investigated with a TA that can be used against the Plaintiff later.  **The use of code 746.2427 was not applicable during this visit.  HRC.044 was cited because new staff verified who the inspector was before entry. There was an administrative review and the citing was reversed.**


6.      Wage Claim 22-021235-5 Tatonia Thomas

**EMAIL Monday, April 18, 2022, 233pm from State of Texas Workforce Commission Diana Euresta who investigated the wage claim and found the Claimant was NOT entitled to 1445 for unpaid wages on April 25, 2022.**  This Claimant refused to provide Employer (Plaintiff) work information such as hours, application, etc., then filed a wage claim.  There have been three hearings to date and has shown coercion, hostility and badgering towards the Plaintiff while favoring the Claimant.  The State of Texas Workforce Commission action are disreputable and have caused great emotional injury and physical strain and psychological harm and character assassination against the Plaintiff and the ethics of the business and business practices and the Plaintiffs character. Pgs. 1-9 EMAIL April 18, 2022, 233pm and attachments including a Wage Claim Form and Wage Determination Order dated April 25, 2022; Addendum A1-A2 are Annual Wage Claim Reports indicating no wage claims filed against the Employer as this is the integrity of the Employer (Plaintiff).

7.      Checking Account All Things Good Kids Academy

Defendant and its agents have prevented online access.  After an unsuccessful attempt to login using the app, Plaintiff attempted to long via the banking website.  Strangely the username ans password did not work again so the reset method was attempted, and Plaintiff was able to login.  However, the data did not appear to be current.   Plaintiff refreshed the screen was automatically logged out and asked to reset the password again because the username and new password were not recognized.  A second attempt to reset the password was made. Plaintiff chose a new password again only to receive a message that the username and password was not recognized.  A third attempt to reset the password was made.  Plaintiff chose a new password again only to receive the same message.  The banker and teller could not explain the matter neither could the online banker.  I eventually exclaimed the matter was above their authority.  This effort is the same as all others, any electronic or online access has been denied the Plaintiff. Pg. 1 Teller print out Checking Savings Account History; Pg. 2 Message given via online and app after each password attempts.


8.      Attorney Brett Pritchard

All attorneys, as it pertains to the legal needs of the Plaintiff either recused themselves or refused to offer their services.  After contacting hundreds of attorneys seeking legal support, it was realized the responses were not by happenstance but a result of the Defendant's effort to bring harm and injury to the Plaintiff by obstructing justice. Pgs. 1-2 EMAIL Friday, August 12, 2022, 1033am Attorney's paralegal Alicia states Plaintiff letter requesting SOAH hearing was received July 1, 2022, requesting the cause number; pg. 3 EMAIL Wednesday, August 17, 2022, with Letter dated Wednesday, August 17, 2022, 952am stating Plaintiff requested a valid and timely hearing with SOAH June 28, 2022. **THIS MATTER HAS NOT BEEN REFERRED TO SOAH**; pg. 4 December 7, 2022, Letter from the attorney recusing himself claiming **CAUSE EXCEEDS THE REALITY OF THE SERVICES THAT CAN BE PROVIDED** the Plaintiff's dissatisfaction without further communication.


9.      Internal Revenue Service Letter

Communication from the Internal Revenue Service (IRS) confirms suspicions the Defendants motive is to cause imminent injury and harm to the Plaintiff further indicating the involvement of the Federal Bureau of Investigation (FBI) in Plaintiff's affairs considering all instances of business rapport being terminated without cause, obstruction of justice, invasion of privacy, closure of all business in the state of Texas to include revocation of licenses, etc. pgs. 1-3 Internal Revenue Service (IRS) Letter dated July 19, 2022, **indicating the FBI notified the department of the Plaintiff's arrest**; pg. 4 Letter to the IRS explaining charge; pg. 6 facsimile confirmation.


10.     Defendant's Public Website

The Defendant's Public Website is maintained by the Defendant who has the responsibility of assuring information is current for public viewing when searching for childcare/early childhood education programs.  Defendant has not marked a "Y" for ACCEPTS CHILD-CARE SUBSIDIES as a two-fold purpose.  One purpose was that Defendant PERMANTLY CLOSED the Plaintiffs early childhood education program.    **CCA has corrected or updated its information according to the email from CCA on pg. 6; CCG Dallas County has not**.  The Defendant's public website still does not indicate that Plaintiff receives subsidies after Defendant was notified of the update.  The response from the Child Care Relief Fund is eligible for payment in April of 2023 there must be a referral between 6/1/2021 – 11/30/2022 and to remain eligible.  **Defendant has placed blame on TWC and CCA for the portal not being updated when in fact Defendant REFUSES TO UPDATE THE PORTAL** (Defendant must log into a portal to make updates that will reflect on the public website**). The defendant is capable of updating the Defendant's website at will and is fully aware the Plaintiff does not have such a security level.**  Defendant's intention is to cause an undeniable, insurmountable injury and harm to Plaintiff. Pg. 1 EMAIL Sunday, March 12, 2023, 448pm to CCG Dallas, Provider Portal showing blank for subsidies; Referral during eligibility period pg. 10.15 Chatman, pg. 10.17 Young, pg. 10.18 Porter, pg. 10.19 Jordan; pgs. 5-6 EMAIL from CCA Ellis County indicating contract/provider eligibility "up to date"; pgs. 8-9 EMAIL Thursday, April 12, 2018 Defendant documents changes made to the public website; pgs. 11-12 provider portal login page and what providers can do.

11.     American Express

Strangely, in the month of August 2022 when the strong arm of Defendant and its agents seek to bring harm and injury to the Plaintiff by isolating, terminating all business rapport and dissolving all financial opportunities, offers from American Express with an UNLIMITED LINE OF CREDIT for all three business arrive (All Things Good Kids Academy (ATG), ANV Concepts Home Health Services (ANV) and Taxology101, Inc.).  Plaintiff only accepted Taxology101 Inc. Defendant has been able to PERMANENTLY CLOSED both ATG (an early childhood education program) and ANV Concepts Home Health Agency (healthcare provider services) as they both require licensure via Defendant.  However, Taxology101, Inc. falls under the federal government which is why Defendant and its agents are diligently seeking to cause Plaintiff to an error in practice.  Pgs. 1-3 mail envelopes American Express offers to all three businesses; pg. 4 screenshot of AMEX App showing NO PRESET SPENDING LIMIT, pg. 2 picture of two AMEX Unlimited Cards; pgs. 6-24 agreements.


12.     ANV Concepts Home Health Agency LLC.

        Texas Unified Licensure Information Portal (TULIP)

$260K lost revenue in a single instance because of the Defendant's efforts.  This is certainly harm, heart stopping as Plaintiff was able to login to Defendant's portal but not able to save changes.  After repeated efforts a ticket was created by calling the help desk and while waiting for the error to be corrected too much time passed and Plaintiff was not able to update licensure information (all information remained the same only the payment for the renewal needed to be made).  As of the final email apologizing for the delay, the administration had already closed the account and Plaintiff had already accepted responsibility.  Pgs. 1-3 EMAIL TULIP Support explaining the delay in allowing access to the system.  The delay resulted in Plaintiff being unable to log in and submit payment for renewal of licensure.


13.     Smart Fax

Smart Fax is the online fax service used for business by Plaintiff.  Just as all online accesses were not accessible, Smart Fax indicated the account was "unknown".  There was no payment due and no other cause for this accessibility to be taken away without reason; Defendant has been able to isolate Plaintiff by removing from normal habits and behaviors to living out of fear and concern for life and livelihood, psychological harm, and damage.

14.     Taxology101, Inc.

Taxology101, Inc. falls under the federal government which is why the Defendant's, and its agents are diligently seeking to cause the Plaintiff to error in practice.  Defendant is not able to close this business as it does not have oversight.  Julie De Le Rosa, a suspected agent on behalf of the Defendant, and individual met through LaShonda R. Tillis, a suspected agent on behalf of the Defendant, submitted an email requesting that I complete a tax return for the year 2022 based on numbers for the previous year.  She was informed that the practice would be unethical and that she had to provide current information for the year 2022 and original documents and signatures had to be obtained prior to electronic submission.  There have been several calls from Houston, Austin, San Antonio, and Arlington requesting financial support without following through with the required original documents or proof of identity, etc.  The individuals have decided to have someone else complete their financials.   Pgs. 1-3 EMAIL Monday, February 27, 2023, 541pm Julie requesting 2022 tax returns for Clarks.

15.     Texas Administrative Codes Administrative Reviews and Due Process Hearing

**40 TAC 745.113, pgs. 15.1-2 Who can request a due process hearing?**  EXHIBIT X is a letter from the Defendant to the Plaintiff that does not provide an opportunity for a RISK EVALUATION, ADMINISTRATIVE HEARING or DUE PROCESS HEARING when barred from the facility despite the regulation set forth in the Minimum Standards for Childcare Centers as according to 40 TAC 745.113.  According to TAC Defendant should have notified persons the adverse actions that were taken against and the operation of their option for an administrative review and due process hearing options.  The Defendant INFRINGED UPON THE PLAINTIFF'S RIGHT AND THE GUARDIAN'S RIGHT TO DEFEND THEMSELVES.

**40 TAC 745.8843, pgs, 15.3-4 What happens after I make a request for a due process hearing?**
Plaintiff's attorney Brett Pritchard's letter indicates a request was received timely requesting a SOAH hearing.  The request has not been received for the docket!  This is a clear indication the request is being held, not that there is a backlog and no date is available.  According to 40 TAC 745.8843 (a) upon receipt, an administrative law judge should have been appointed by SOAH and a hearing should have been scheduled no matter how far out the date is see 40 TAC 745.8843 (b).  In this matter, Defendant has maliciously caused the request to be hindered, and paused to accomplish an agenda to bring harm to Plaintiff.

**40 TAC 745.8853, Pgs. 15.5-6 What action must the HHSC take after the final decision in a due process hearing?**  After the SOAH hearing when the honorable judge ruled in favor or the Plaintiff, Defendant allowed the citing to remain visible on the Plaintiff's record for five years.

**Pgs. 15.6-7 SWORN AFFIDAVIT from guardian stating he was never notified of an investigation nor its outcome, did not provide his information via affidavit nor application, and did not give any other person permission to provide his information for employment or investigation.**


16.     Advance Childcare Network (ACN)

Our Child and Adult Care Food Program (CACFP) third-party administrator is supposed to support the Plaintiff by causing efficiency in meal service.  This agreement becomes a hardship when the contractual agreement becomes less of a support and more of a web of sorts.

**Unfortunately, the Plaintiff's rapport was FORCED TO END upon receipt of a letter dated August 3, 2022.  The letter marked a change in center operational days/times and meal service times as previously discussed and agreed; however, without the Plaintiff's knowledge the letter indicated a license expiration date of 12/17/2022 – the license is not expired.   In October the Defendant had taken such drastic measures to harass that Plaintiff and staff became fearful for themselves and children in care.  There was a high volume of calls and requests for tours with no enrollment.   When we realized we were under attack we considered ending our rapport rather than waiting for the Defendant to cause ACN to fraudulently cite deficiencies and destroy our public record as other have attempted in the past; not realizing a decision was already made to end our rapport as of August 3, 2022, the**

date of the letter. Pg. 1 Letter of Change August 3, 2022, Center Operational Days/Times, Meal Service Times; pg. 2 License/Registration Information Line A6. License Expiration Date 12/17/2022.   Pgs. 8-13 lists (snap shots) of children and training indicating we were open and operational for the past years contrary to Education First Steps (EFS).  And, preparing for a great year in 2023 by hiring new staff and increasing enrollment.

**17. PARENT STATEMENTS**

**Parents who were receiving subsidies for childcare services were told our facility was closed. The Defendant forwarded a list of facilities to be PERMANENTLY CLOSED.  We were FORCED TO CLOSURE unaware in August of 2022, that we were not locatable, and deemed nonoperational to everyone which is why the Defendant's agents flooded the facility with fake enrollment efforts and phone calls in an effort to cite deficiencies to find a reason to rightfully close the facility as a cover for their ill effort to bring harm to the Plaintiff.  Since their continued failure to cite for deficiencies that will uphold, drastic efforts to expand harm and injury have been enforced.**

18.     ATT arrived at All Things Good Kids academy to install the latest wiring in 2022.  Then without warning.  A gentleman arrived at the facility without further notice and brought a box, only staff was present and they did not question the actions.  There is only one business line for the academy. Whenever you answer the business line (line 1) the other line picks up (line 2). When we pick up line two it lights up but of course there is no dial tone.

19.     This section of documents indicates our second reopening after we realized the effort to permanently close the facility, not knowing we were already FORCED TO CLOSE.  At the end of 2021 we were told he had to close for 90 days as that was the only type of closure.  We reopened in February of 2021.  When we noticed we were under attack by the Defendant and its agents we were under the impression we had to request the same type of closure but this time we were told we could reopen at any time.  However, this time the Defendant FORCED OUR CLOSURE as they notified all that we were PERMANENTLY CLOSED – they did not do this in

2022 so we were not on the lookout for this effort.   The request for our license to be returned to the department and a letter of closure was not performed in 2021 and this effort was not told to the Plaintiff until an email was received by the Plaintiff.  The Defendant arrived at the facility at reopening September 19, 2022.  If the objective was not a PERMANET CLOSURE the Defendant should not notify All that the Plaintiff was operating as of that date.  Instead the Defendant continued to ensure separation, closure and termination of all business as it pertains to the Plaintiff.

19      Fake Applicants

20.     This section of documents shows how simple it is to cite deficiencies frivolously. Susan Marbut and Mia Rawlins.

21.     This section of documents indicate a citing by Leslie Rodney on October 17, 2022 (the day of our reopening) indicating our refusal to allow her entry to conduct an "investigation". We just opened, and we had one child present.  The Defendant was informed we had one child present via Advance Childcare Network our third-party food program, a corporation acting as an Agent for the Defendant.  There was No Report to result in an investigation as this act was mere harassment. The citing was NOT UPHELD.  Documents include a statement of events from the Director Frances Hart.

22.     Reivax Doyen Project building homes for Veterans have ended because of Defendant. All contractors licensed by the State of Texas have made themselves unavailable or not responsive.  Note these outcomes are extraordinary and are a direct impact of the Defendant's far-reaching authority and powers.

23.     Attorney Kipp Marshall an agent for the Defendant has attempted repeatedly to gain original documents of a quiet deed transfer case.  Every effort taken is only beneficial to the opposing party in this matter. (19 PAGES)

ISSUES THAT RESULT IN LOSS OF PROPERTY IN SUIT

     a) Marshall requested original documents be mailed to him

     b) Marshall stated he would meet at the opposing party's Attorney's office to review original documents

     c) Marshall so happened to asked that I provide proof of insurance just as Executive Insurance notified of the policy termination date approaching

     d) Agent invoices for thousands and documents thousands paid when no payment has been made.  Then invoices smaller dollar amounts that are written off.


These next documents were not numbered following Exhibit 23.  Only the first page of the exhibit was numbered 23 while the remaining 18 were not counted.

Document Texas Health and Human Services February 9, 2023, is an ELIGIBILITY letter to employ Uvonda Sernta Roberson who was an applicant to serve as Director of ATG, the faith-based, essential business in this matter.  Because Plaintiff was not able to be on-site due to the BARR and Defendant's failure to perform a RISK EVALUATION communication was performed away from the business organization.  **This applicant was a referral of LaShonda R. Tillis who is an Agent for the Defendant.  Tillis said the applicant served in church ministry for years with her and was currently serving at a childcare facility where she was overlooked as a Director for over twenty years.  Tillis said she had already resigned and was looking for employment.**  This applicant was given access to the business office to obtain an application and all documentation for the completion of hiring.  Roberson said she had five families that needed childcare upon her hire and could start immediately.  Essentially this applicant rummaged through all documents in the business office did not complete an application and did nothing to act as an individual aspiring to hold a title as Director for the business organization.  This applicant disappeared. (2 pages)

Document Texas Health and Human Services January 28, 2023, is an ELIGIBILITY letter to employ Sarah Branisha Hampton who was an applicant to serve as a CAREGIVER at ATG, the faith-based, essential business in this matter.  Because Plaintiff was not able to be on-site due to the BARR and Defendants failure to perform a RISK EVALUATION communication was performed away from the business organization.  **This applicant was a referral of LaShonda R. Tillis who is an Agent for the Defendant.  Tillis said this applicant was her foster child who was currently working at a childcare facility that was owned and operated by her ex-husband's family.  And, her now adult foster child was going to more than likely lose employment.**  Documents include an Official Verification Letter from Alicia's Christian Academy and a copy of identification. (4 pages)

ISSUES THAT COULD HAVE RESULTED IN CITING FOR DEFICIENCY

a) Roberson did not have a completed Application for Employment to include I9, W4, Required training, Attorney General Notification, Affidavit of Eligibility to Work in Texas, etc.
b) Roberson instructed Hampton to start working without communication with the Plaintiff as there was no completed Application for Employment.
c) Hampton did not have a valid High School Diploma or GED certificate.
d) Roberson stated children was starting who were CCA and CCG.  There was no approval for service to begin and no start date given and no Admission Record on file, etc.

This entire effort of the Defendant was elaborately orchestrated and designed to cause chaos, citing for deficiencies and certainly to cause Plaintiff to violate the BARR placed that prevents being at the business location.  **PERMANENT CLOSURE** would then be justified and unquestioned.

Document is a Facebook profile page of LaShonda R. Tillis an Agent for the Defendant.  She apparently has several spellings of her name **Shawnda** Ree **Tills**, **Lashawnda** Tillis **Robert**, Tillis **Roberts** and I have know her as **LaShonda** R. **Tillis**.  This is seven variations of her name in merely three documents. The second document is a snapshot of a ring video where this agent was placing a device on and off record upon entering and exiting.  Will append via USB this submission to the Court.

Julie De La Rosa (Julie Harris) Facebook profile.  This Agent on behalf of the Defendant was introduced by LaShonda Tillis through Dot Clark and Billy Clark.  Julie De Le Rosa inserted herself as a builder who could help with completing the build of homes for Veterans.  While her purpose was to propose a quote and complete the build, her communication became a need to gain accounting and tax services almost instantly.  Again, after any communication with a contact, their rapport begins to change or completely end with no response.  This Agent began to forward tax documents for 2020 and 2021 supposedly belonging to Dot and Billy Clark who were exclaimed to be out of the country.  The instruction was that there were many expenses but there were no receipts and a poor job of documenting so, "make of some numbers for 2022 and come up with some expenses".  This was a poor effort on behalf of Defendant to cause the Plaintiff to act in an unprofessional manner.

a) The tax payers was out of the country
b) There were no original documents.
c) There were no documents to support 2022 income and expenses
d) There would be no consent or signatures obtained or permissions given to complete returns

Howard Johnson inserted himself into Plaintiff's life in 2022.  He introduced himself as a builder.  He periodically called and checked on Plaintiff only to find out about the physical abuse endured.  This Agent said he was single and that I did not deserve to be hit on and that he was going to come to get me and marry me himself.  This Agent for the Defendant also played on the pains and hurts and emotions of Plaintiff by acting as a comforter and protector. He drove from Houston Texas, stayed overnight, and attended a circus event with the Plaintiff, Universe Soul Circus.  (2 pages)

   a)  At the circus this Agent stood mid-floor with me by his side and looked afar as if looking for someone or assuring he was seen, or we both were seen.
   b)  Upon arrival to the circus we were parked in a separate parking lot where there were no other vehicles – initially thinking special treatment.  However, after the event, there was a huge red Chevrolet truck hiding the Plaintiff's vehicle which was not visible.
   c)  This Agent's "sister" Fe who lives in Rockwall and her male friend to my home for a leisurely moment and left without any further communication.  All three seem standoffish at moments, gathering away from everyone.
   d)  This Agent stated he needed to meet someone to pick up some keys; but took my vehicle without my knowledge, drove to Ledbetter and I35 to a shopping center, and returned.  He lives in Houston, Texas, key to what?
   e)  This Agent left a device at my home that was assumed to be a tablet but was confirmed to be a charger.  The device was unplugged and placed in a closet.  It has been appended as evidence as it is believed to be "bugged" or used as surveillance.  A picture will be submitted to the Defendant in this matter.
   f)  The business card indicates an address 4110 Almeda Road #8118, Houston, Texas 77004 and he provided a home address of 13611 Boca Raton Drive, Houston, Texas, 77069 on March 24, 2023, where he leased.

Document is a picture of a ring camera video.  Luiz Hernandez an Agent for the Defendant arrived to be employed to restore and build for the business organization.  A picture identification was provided after he stated he had none because he lost his wallet.  This Agent refused to complete the application process and could not remain employed. (2 pages)

28.    Screenshot of the ring camera video of an Uber driver arriving to bring food to Tillis "who doesn't miss a meal" after she had already left.  This Uber driver is believed to be an Agent for the Defendant who around this time seemed to be infiltrating camera systems, computer systems and other technology.

29.    Screenshot of the ring camera video of an unknown man wearing a badge (up close) arriving at Plaintiff's home

30.    Screenshot of the ring camera video of an unknown man wearing a badge arriving at Plaintiff's home

31.     Screenshot of the ring camera video of an Amazon delivery.  The package was placed on the ground.  The picture was actually taken of the RING CAMERA, not the package!  The driver picked up the package and walked away. View 1

32.     Screenshot of the ring camera video of an Amazon delivery.  The package was placed on the ground.  The picture was actually taken of the RING CAMERA, not the package!  The driver picked up the package and walked away. View 2

33.     Screenshot of the ring camera video of an Amazon delivery.  The package was placed on the ground.  The picture was actually taken of the RING CAMERA, not the package!  The driver picked up the package and walked away. View 3

34.     Screenshot of the ring camera video of the light from a drone moves across the trees a yard.  After the video was accessed, it became still and could not be played as a video.

35.     Screenshot of the ring camera video a drone captured on another day.  The video was accessed and clearly showed an unusually sophisticated appearing drone move from the back of the home upward and away to the right.  Once accessed the video was not able to be played and only served as a picture.  View 1

36.     Screenshot of the ring camera video a drone captured on another day.  The video was accessed and clearly showed an unusually sophisticated appearing drone move from the back of the home upward and away to the right.  Once accessed the video was not able to be played and only served as a picture.  View 2

37-39.  Eventually, it was noted that Plaintiff was being followed.  The vehicles seemed to be Chevrolet.  Not knowing most official vehicles were Chevrolets until this moment.  This truck was parked in front of Plaintiff's property.  A gentleman called the Plaintiff and shared that a truck pulled up but he did not see anyone get out.  He stepped on to his porch and after a closer look, he said no one was in the vehicle.  The gentleman took a picture of the license plate STATE OFFICIAL SD71A Black Chevrolet Truck.  I dialed 911 and reported what I was told by the gentleman and what I saw on the camera preview.  The vehicle pulled up and no one could visibly be seen, after a few minutes no one got out – the police was called.

40-41.  Pictures of vehicles that seemed to be following Plaintiff.
   a)  White Chevrolet truck ARKANSAS ACM 25D believed to belong to Agent Arielle Gaines whom Calvin E. Richardson had rapport prior to marriage as of November 2022 to current lives.
   b)  Black Chevrolet SUV
   c)  White service vehicle that arrived at Starbucks before the arrival of Plaintiff and Uvonda Roberson.  This was where we met because Plaintiff was BARRed from business organization.  It was noted at this time that service vehicles seemed to

be at locations frequented or if communicated in advance as a means of surveillance. (misnumbered 23 2pages and) After pulling around to the back of the building a gentlemen climbed down from the ladder it seemed and walked around to the front and entered the van (24-27).

d) Lucky's Locksmith was dispatched by AAA.  It was not understood at the time what was the Defendant's efforts were but it was extraordinary that a locksmith was called from Arlington, TX 76018, Admin: (817) 466-3387 as the locksmith normally dispatch is one of three that are much closer.  Plaintiff has been a AAA member for many years and is familiar with the service providers.  Their demeanor was rigid and unusual.  This effort still is not completely understood except it allows access to the Defendant if they have keys???

e) This black truck appeared with Florida plates at the neighbors, parked on the grass nearest Plaintiff's yard and has not moved.  Neighbors no longer speak or have any rapport.  The Defendant's ability to isolate and result in isolation because of FEAR AND PARANOIA is INHUMAN.  HOW CAN ONE BE FREE AND PSYCHOLOGICALLY CAPTIVE? (3 pages)

f) UPS United Parcel Service seen parked across from Plaintiff's home repeatedly in the same location with no activity.

Document Progressive Insurance requesting signature of a document via DocuSign with no visual text.  There was a refusal to complete the signature via PDF, wet signature and return – policy cancelled. (misnumbered 6,11-14)

ADT digital screen control panel indicates Plaintiff as Master with a User Code that would not allow access.  ADT customer service rerouted call initially resulting in no assistance.  A callback revealed PARTITION 1 has AUTHORITY LEVEL 1.  It was explained this was a GLITCH and a signal would be sent to fix – it has remained.  Plaintiff no longer uses the alarm system but its sensors do indicate what doors and windows are opened and closed so Defendant is yet aware of Plaintiffs arrival and departure.  Defendant is also capable of entering at will. (one page)

Various websites and emails were blocked or could not be accessed.
THIS SITE CAN'T BE REACHED (two pages)

Computer System CREATOR OWNER (highlighted) has no checkmarks to indicate PERMISSIONS (misnumbered 20)

Computer System SYSTEM (highlighted) checkmarks indicate PERMISSIONS ALLOWED having all control (misnumbered0 21)

Norton Permission to change all data on all websites and replace the page seen (two pages)

Edge apps page – all apps once available are no longer available (two pages)

MSI was unable to print for days, everything requested to be downloaded, was unable to download stating disk full.  This error was non ending for days at a time not allowing ability to print this suit present in this Court.  Plaintiff has to visit a programmer to instruct a "work around" to bypass error and save to USB and take to a printing company to print to paper. (three pages)

UNDOING CHANGES MADE TO YOUR COMPUTER message seen on all devices March 6, 2023.  The changes resulted in requests for repair and reprogramming and backing up documents to hard drives as devices became inoperable, phone calls rerouted and impeded, etc.

75-76   Email informing attorney Eric Durojalye of Patrick J. McClain that Arthur Patterson was harassing during period of protective order.  And, following pages are evidence of repeated phone calls, arriving at Plaintiff's home and business repeatedly, purchasing a burner phone and threatening that Plaintiff needed to call or "would loose everything" and witness eye testimony of the events and actions of Arthur Patterson.
       The attorney took no action
       The police departments took no action

77. Document showing Arthurs' effort to steal money from Plaitiffs account.
       Police notified with no action taken

80.      Official Receipt Constable Precinct 5

81.      UPS Receipt for Official Receipt Constable Precinct 5 Receipt
       EMAIL to TXWD_ECF_help@txwd.uscourts.gov regarding Pacer

82.      EMAIL from Attorney Brett H. Pritchard communicating the Defendant had impeded the matter by not referred the request for SOAH to Dockett.

83.      EMAILS and attachments from Angela Johnson2 in the Month of May preceding the August closure.  There was an effort to impede the appointment of a Director for the academy and eventually the threat of permanent closure if one was not appointed.

DOCUMENT inadvertently added to 83. Handwriting expert report regarding 443RD JUDICIAL DISTRICT COURT DALLAS COUNTY Case No. 104609

84.     TEXAS WORKFORCE COMMISSION DOCUMENTS regarding claim

85-87.  301ST JUDICIAL COURT DALLAS COUNTY DOCUMENTS Case No. DF 23-00638

88.     HOUSE BILL 585 Witness List House Committee Reports March 25, 2021 through finality into law April 1, 2021.

89.     Julie De Le Rosa (Chavez) emails regarding Billie Clark's tax return

90.     Colorado Technical University, issues with logins never experienced before there was no change to login information.  A new success coach was assigned midstream, this had never been experienced before.  There is an effort to cause failure in courses as a means to end funding causing permanent failure as there would be an inability to re-enroll or gain funding.

91-92. Attorneys reaching out to gain information repeatedly without response eventually realized it was an effort to gain information regarding the case filed or being filed rather than a means to consider representation.  Plaintiff was communicating and providing information that had not yet been filed.

92.7    $10 Invoice from Silberman Lawfirm regarding matter Smith's 443RD JUDICIAL DISTRICT COURT DALLAS COUNTY Case No. 104609

93.     Return receipts of Plaintiff's complaints and recording forwarded to Defendant. Immediately following this effort Defendant's FORCED THE CLOSURE OF Plaintiff's faith-based, essential business during a declared pandemic.

94.     Buena Vista Water utilities refused payment in form of credit card for water meters for Veteran homes project.  All payments have been made in the form of credit card until this effort of the Defendant to altar or cause injury against the Plaintiff.  This is not by happenstance this is merely one of the many efforts combined to accomplish the effort.

95     Terry Smith removing vehicles belonging to the Plaintiff resulting from the purchase of the property.  Hahn stated "well, that's what happens.  Just walk away."  Which resulted in my search for another attorney.

96.    HILCO Electric showing the massive increase in billing acting as Agents on behalf of Defendant.

96.5-96.5 Silberman Law Firm invoices and payments – payments were never made since $5k deposit to secure counsel.  All invoices after are fraudulently performed.

97.    Ring Camera pictures to show cyber security breach of cameras.  The camera shows a still picture in some frames where there is a light on when in real time there is no light on and Plaintiff can not control ON/OFF Recording.

98.    Docs Bail Bonds/Ellis County Bail Bonds the Bond Requirements was received APRIL 7, 2023 as a copy was never provided to the Plaintiff or to Frances Hart.  Upon release and signature the excuse given was that it would be electronically scanned an other documents produced would be emailed.  Plaintiff feared that there were requirements that could result in the rovocation of bond because of the behavior of the Defendant.  Official Ellis County Sherrif police vehicles were now following and pulling up next to and pulling off and State Troopers were tailing the Plaintiff.  This fear resulted in thought was to why an arrest would take place only to find the Bond Requirements were NOT WHAT WAS COMMUNICATED TO PLAINTIFF.  For over a year Plaintiff has been "checking in" on Sundays and calls every month to assure in good standing while the Bond Requirements instruct to "check in" on Friday's via an APP.  Attorney McClain suggested nothing is wrong but to continue checking in on Sundays that if there wan an issue it would have been identified by now.

UNNUMBERED DOCUMENTS
Agents pictures and license plates, etc.
Praveen Varkey Suit DOCUMENTS

100.    Official Officers Return, Summons In Civil Action, Invoice received in the mail.

101.    Motion for Judgement or Recusal Including Exemplary Damages Case No. DF 23-00638 request judgement in this matter.

102.    Taxpayer Law Decision Claim No. 22-051235-5.  This letter was dated for March 8, 2023. Plaintiff has never missed a deadline and did not in this case either.  The United States Post Office held the mail beyond the appeal date.  There was not mail in the P O Box for weeks.  This is the ability of the Defendant to cause events to take place.  Agents are every where and they are in deep was the message received via a profile on messenger and it is true.

103.   Michael Best Attorney for Dr. Ting in Praveen Varkey suit.  This letter resulted from Varkey not providing true and accurate contact information for Defendant's.  Attorneys for opposing party are acting as Agent's on behalf of the Defendant.  The decision date for this suit is April 24, 2023.

104. Nations Direct Mortgage increased mortgage from $2300 to $2500 now to $2900.  Acting as an Agent on behalf of the Defendant to cause a massive increase while the Defendant eliminates all possible income.  A quiet and invisible corruption between Corporations and the State of Texas.

105.   Prosperity Bank Deposit of settlement in Varkey suit due to financial strain and pressure resulting from Defendant's acts.  The deposit was made and place on two-day hold.  After two days the deposit remained on hold and no one could explain or fix the error.  Regulations eventually stated it was a "glitch".  In fact every error experienced regarding technology has been explained as a .glitch".  It is believed these "glitches" are also Defendant's ability to breach cyberspace and cause impeded to systematic processes.

106.   Texas EFILE has been denied the Plaintiff.  All suits have to be filed in person and there is great fear that other filings and notifications will be missed due to Defendant's ability to breach cyberspace and cause impeded to systematic processes.

107.   Citations to Vacate regarding Quiet Deed Suit.  These were dismissed while the suit was in a higher court.  The Plaintiff's Attorney is an Agent acting on behalf of the Defendant and soon the suit will be dismissed based on his efforts.  The delays is a result of an effort to gain the original documents.

108.   EMAIL response from Texas Workforce Commission – Child Care Relief Fund that funds have not been disbursed is not an honest response.  There is a refusal to disburse funds while in dire need.  The Forced Closure, refusal to refer students to low-income families, inability to hire staff with no funds and barr of Plaintiff have resulted in utilities now being disconnected.

109.   Hudson Energy and Message from website

110.   Internal Revenue Service 2018 Taxes were ABATED years ago – it was reversed???

111.   There is currently a payment plan for balance due for 2019 an 2020 a payment of $200 per month to date.

112    Texas Protection of Religious Organization Act, TEX. GOV'T CODE ANN. § 2401.002 (West 2021)

113    HHSC Administrative Review Decision December 21, 2022 citing for deficiency by Leslie Rodney OVERTURNED.

114.    HHSC Letter and Form showing a citing for a biological parent of enrolled student as though he were an employee.  See also US Walter Redaux.

115.    Nations Direct Mortgage amortization schedule and letter of breech, proof of payment

116.    State Board of Dental Examiner letter that a hearing was taking place. This letter was held by the United States Postal Service and was not received for over a month after the hearing date.

117.    NTTA causing intentional error along with Texas Department of Motor Vehicles as this is the only way these fictitious notices could be arriving to Plaintiffs location.  Dusting Huckabee and Starlette Bennettt

118.    The Internal Revenue Service is CORRECT THE REVERSAL OF 2018 abatement

119.    City of Ovilla NOTICE OF VIOLATION showing a home address of 200 Cockrell Hill Road instead of 202 Cockrell Hill Road.

Recordings USB:
USB RECORDINGS XAVIER L. CRITTENDON V. STATE OF TEXAS HHSC

SOAH Hearing
The Honorable Judge of SOAH allowed Plaintiff to submit evidence the Defendant attempted to prevent from being submitted to the court to present the case against the Defendant which is an obstruction of justice.  The ruling was in favor of the Plaintiff however the citing remained on the Plaintiffs record and public record for five years.

Walter admin penalty Calvin Employee
Plaintiff was the Director over another early childhood education program.  A parent and biological father to an enrolled child who has other nephews nieces and extended family enrolled was considered an employee because he would transport those children when their parents were not available.  Mr. Richardson was found on record of each of the children as an emergency pickup and drop and relative to each of the children.  The Defendant stated they saw him as an employee and called the wife or ex wife at her place of employment to gain Mr. Richardson's pertinent information, conducted a background check under the Plaintiff's facility license and cited for hiring an employee who had a felony background and posed as a threat to children.  Plaintiff was coerced into following through with disciplinary action and agreeing to probation unaware of the actual repercussion of the Defendant's efforts.  There was no documentation sent to Mr. Richardson regarding the background check or the results or the investigation itself nor to the Plaintiff as this information was found to be available thorough conversation with a peer and was requested years later through open records and is no longer visible on the Defendant's website.  Plaintiff was not allowed to have an Administrative Hearing as informed that only the Defendant can scheduled this proceeding and no administrative review was allowed upon request.

TWC hearing 20220726
Officer Wilks harrassment, coercement, badgering of Plaintiff during the hearing.  Disregarding Plaintiffs evidence and speaking to evidence not received by Plaintiff and forcing testimony regarding that evidence.  Defendant's agent repeatedly claimed the agent created the Plaintiffs website when in fact

ProWeaver created and designed the website for the Plaintiff years ago; claimant stated she performed work with not work produced what account what submissions.  Plaintiff provided both state and federal as well as financial documents to show proof of address.

TWC 20220303
TWC 20220302
TWC 2022303
TWC 2022302

These hearing included a series of breaks as Plaintiff had not received the 196 page document and disk from Defendant's agent as evidence.  A break was taken to allow a drive to the post office to retrieve.  Then another break to review a specific section of the evidence was permitted.  Upon continuing Plaintiff requested to include other documents as exhibits.  These items were announced but never considered.  There was an additional recording that was missed that indicated the Defendant's agent questioned the claimant regarding her exhibit of time indicating hourly and missed days but claiming salaried and a pay amount that does equal the hours submitted.  Defendant's agent allowed a break so the claimant could develop that document and submit via email but was unsuccessful.

HHSC GIO IBARRA 4
HHSC CCL 20220728

Communication with Defendant prior to Administrative Review informing of prior initiatives to forcibly close the Plaintiff.  Administrative Review indicating a WAIVER was requested prior to the citing (not in an attempt to waive a citing for no background), the waiver was emailed to Angela Johnson, Gio Ibarra prior to the citing.  The citing for an employee in orientation.  Facility had only 12 children in care.  Angela Johnson arrived as another employee was leaving due to an family emergency and was asked since the other employee had to leave if the staff being orientated leave for the day as well to prevent the citing and Angela refused.  The citing was upheld stating no waiver was requested.

EFS 20221217

Video Conference via TEAM visibly showing the staff was being coerced and under duress.  Plaintiff was enduring harassment from Defendant and had guardians to disenroll as staff was working in fear.  Plaintiff requested this meeting with EFS to see if they could provide some support or direction only to find they had already terminated rapport.  The world "close" is used out of context several times as there is now a better understanding of the word use.  Plaintiff has never intently CLOSED or PERMANTLY STOPPED PROVIDING CHILDCARE SERVICES.  Just as all that we have a rapport the Defendant has cause separation.

Angela ccg dallas auth care 2

A parent was contacted at work and told her childcare would not be reimbursed.  The parent and the Plaintiff was approved for services to begin on that prior Monday to be told on a Wednesday their services would not be paid.  The parent threatened an attorney.

911

A vehicle parked that did not belong to a parent nor educator park on the business grounds.  Only to find the car belonged to a state official.  A lady did arrive with keys saying she was the driver and wanted to get her hair done by a hairdresser two doors down.  Plaintiff went by the hair dressor's home only to find she had not been there for hours according to her husband.



Walter admin
penalty Calvin Emplo



TWC hearing
20220726.m4a



TWC 20220303.m4a



TWC 20220302.m4a



TWC 2022303.m4a



TWC 2022302.m4a



SOAH
Hearing.WMA



Ovilla Police Calling
for Calvin.m4a

Ovilla Police Department notified Calvin of reports filed against him unofficially



Brett Pritchard
Consult.m4a

Consult with Brett Pritchard



EFS Michelle.m4a

Educational First Steps Michelle


Motion To Proceed
and Order for Imme...


Motion For
Judgement or Recus...



HHSC gio ibarra
6.m4a

HHSC GIO IBARRA
5.m4a

HHSC GIO IBARRA
4.m4a

HHSC GIO  Ibarra
ADMIN REVIEW.m4a

HHSC Erin Chatman
north central Cca at    proof that children were enrolled with low subsidies



HHSC CCL
20220728.m4a



HHSC Angela
Johnson 2 atg open    Arrived to do a walk through on the day we reopened.  Stated if we had children we
would not have been cited but then stated the walk through is required to assure the safety of children
before reopening.  There was an intentional effort not to respond to notice of opening date so if she
arrived and children were present she could cite for deficiency.  These efforts are intentional.



4:56      LTE

Greeting    **Voicemail**    Edit

Weatherford, TX    00:24

**+1 (214) 455-2257**    2/21/23
Grand Prairie, TX    00:30 ⓘ

**+1 (972) 839-5655**    2/21/23
Grand Prairie, TX    00:10 ⓘ

**Ray Ann**    2/20/23
phone    00:27 ⓘ

**+1 (713) 300-0640**    2/15/23
Houston, TX    00:40 ⓘ

**+1 (817) 937-2213**    ⬆ ⓘ
Arlington, TX
February 13, 2023 at 4:29 PM

0:05          −0:06

⏸      🔊   📞   🗑

**Transcription**

"Hi mom I'm calling to inquire about
your daycare services please give
me a call back my number is
817937693 thank you..."

Was this transcription useful or not useful?

★   Favorites    🕐 Recents **2**    Contacts    ⠿ Keypad    Voicemail **76**



4:53                                    LTE

Greeting                                Edit

# Voicemail

● **+1 (817) 896-2563**
Arlington, TX
February 27, 2023 at 10:32 AM

0:04                                    −0:26

### Transcription

"Hi Kim this is Laura with the four year-old and the 15 month old that just lives down the street from you and I wanted to see if you were able to get any updates today and see if you guys might have a spot for him coming up my number is **817-896-2563** again **817-896-2563** thanks bye-bye..."

Was this transcription **useful** or **not useful**?

● **+1 (214) 455-2257**          2/27/23    ⓘ
Grand Prairie, TX                00:16

● **+1 (972) 533-1840**          2/27/23    ⓘ
Grand Prairie, TX                00:11

★                    ⏱ 2        👤         ⠿         📞 89
Favorites          Recents   Contacts   Keypad    Voicemail



4:54    LTE

Greeting    **Voicemail**    Edit

+1 (817) 555-2555    2/27/23
Arlington, TX    00:30

+1 (214) 455-2257    2/27/23
Grand Prairie, TX    00:16

+1 (972) 533-1840    2/27/23
Grand Prairie, TX    00:11

**Prestridge**    2/24/23
phone    00:22

**+1 (817) 374-7144**
Weatherford, TX
February 22, 2023 at 11:15 AM

0:07    −0:17

**Transcription**

"Hi I was calling to see if you had any availability in your infant room for a three month old if you could give me a call at 817-374-7144 this is Lela Anderson .Paak really am interested thank you..."

Was this transcription useful or not useful?

Favorites    Recents    Contacts    Keypad    Voicemail





Fake Enrollment
1and 4.m4a



EFS 20221217.m4a          Educational First Steps TEAM meeting



Complaint and
Request for Injuncti



Childcare
assistance dallas cou   Childcare Assistance Dallas acknowledging to receiving a report from Defendant that

facility was closed.  How it was received indicated permanent closure.



Cacfp jennifer
johnson 20180220-1   Jennifer Johnson2 arrived a facility claiming she did not get calls or emails regarding a

matter but arrived and stayed to cite for deficiency if the matter was not resolved.  This recording is a

clear indication of the effort to cite for deficiencies and cause the facility to close.



ATG messages TRS
michells Gordon 745   Texas Rising Star ending rapport



Angela ccg dallas
auth care 2.m4a   Childcare Group acknowledging report received from Defendant indicating the facility

had closed.



AAA First Noticed
Change in Reality (A   AAA was first indication that there was a change in the behaviors of services and

corporations in the state of Texas.



Arthur
Patterson.m4a   Started back calling Plaintiff.  Still fearful of behavior Plaintiff has refused all calls to

date.



EFS Michelle.m4a          Educational First Steps Michelle Watts explaining the premise for ending rapport was

not true

















9:33

From   xavierlcrittendon@gmail.com

Fwd: Reset password verification code

\---------- Forwarded message ---------
From: **user_server** <message@dvema.com>
Date: Mon, May 1, 2023 at 10:08 PM
Subject: Reset password verification code
To:

**Hello, Xavierlcritt
endon@gmail.co
m**







*This communication is from a debt collector attempting to collect a debt and any information obtained will be used for that purpose.*





**9:27**
◀ Facebook

◀ 134

36394 ›

Text Message
Today 9:23 AM

Welcome! You will now receive texts from Credit Management, a Debt Collector on behalf of North Texas Tollway Authority #OfMsgsVaries Msg&DataRatesMayApply Info: https://s-url.pro/rk2mTL 844-962-4766
To optout reply STOP

The sender is not in your contact list.

**Report Junk**



















🔒 thecmigroup.formstack.com

*This communication is from a debt collector attempting to collect a debt and any information obtained will be used for that purpose.*



Powered by Formstack   Create your own form ›



**9:27**

◀ Facebook

◀ 134

36394 ›

Text Message
Today 9:23 AM

Welcome! You will now receive texts from Credit Management, a Debt Collector on behalf of North Texas Tollway Authority #OfMsgsVaries Msg&DataRatesMayApply Info: https://s-url.pro/rk2mTL 844-962-4766
To optout reply STOP

The sender is not in your contact list.

**Report Junk**

Subject

Text Message

















9:33

**From** xavierlcrittendon@gmail.com

Fwd: Reset password verification code

---------- Forwarded message ---------
**From: user_server** <message@dvema.com>
Date: Mon, May 1, 2023 at 10:08 PM
Subject: Reset password verification code
To:

**Hello, Xavierlcrittendon@gmail.com**



